NATIONAL MASONIC ACCIDENT ASSOCIATION V. GEORGE F. BURR.

FILED MARCH 5, 1895. No. 6039.

1. **Mutual Benefit Societies:** ACCIDENT INSURANCE. The charter and by-laws of the National Masonic Accident Association of Des Moines, Iowa, examined, and *held:* (1) That the object of the association is to furnish its members the advantages of accident insurance; (2) that the association has no capital and no capital stock; that the only moneys it ever has are derived from the membership fees and dues and assessments paid by its members; (3) that these moneys are used for the purpose of paying the operating expenses of the association and paying the weekly or other benefits due to its members; (4) that the association is purely a mutual institution, only members of the Masonic fraternity being eligible to membership; (5) that the association does not issue policies, as that term is generally understood, but issues to each of its members a certificate of membership; (6) that its members are divided into classes according to the hazard of the occupation they pursue; (7) that the scheme contemplated by the association is the payment of a certain sum per week for a specified time to such of its members as may be temporarily injured; and if such injury proves to be permanent or results in death, then the payment to such member or his beneficiary of a gross sum of money.

2. ———: DEFAULT IN PAYING ASSESSMENTS: SUSPENSION: WAIVER. The certificate of membership provides: "This association does not agree to pay any certificate holder or beneficiary * * * a greater sum than is realized by said association from one assessment of two dollars made and collected upon all members assessable at the date of the accident." "To keep this certificate in force all assessments and dues must be paid within thirty days of the date of the notice from the secretary calling therefor." The by-laws of the association provide: "Information of the amount of each required payment and of the time when the same is to be paid shall be given by the secretary to each member by mailing a written or printed notice to him, postage prepaid, at his last given post-office address at least thirty days prior to the maturity of such payment. * * * And it shall thereupon be the duty of each member to promptly pay the same to the secretary at his office in Des Moines, Iowa, on or

National Masonic Accident Association v. Burr.

before such time of maturity.   If any member shall fail to pay any required payment on or before the day so fixed, his certificate and membership shall cease to be of any force and validity and can only be revived by payment thereof.   No indemnity or benefits of any kind shall be paid for or on account of any injury received between the time when the delinquent payment became due and the time when the same is received by the secretary at his office.   No suit shall be brought upon any disputed claim before the same shall have been arbitrated by a committee, and the award of such committee shall be final and conclusive upon the claimant and the association."   On the 14th of February, 1891, the board of directors of the association made an assessment of three dollars upon each of its members.   This assessment matured on the 1st day of April, and notice thereof was duly given to George F. Burr, who was a member of the association.   Burr did not pay his assessment on or prior to April 1st.   About noon of April 27th, 1891, Burr was injured and made a claim against the association for the weekly benefits which he alleged he was entitled to be paid as the result of his injury and his membership.   The association refused to pay the claim, and Burr brought this suit.   The evidence tended to show that on the 25th of April, 1891, Burr mailed a letter at York, Nebraska, directed to the association in Des Moines, Iowa, containing his check for three dollars to pay the assessment due April 1, and that ordinarily such letter would reach the association on the 26th or by the morning of the 27th of April.   On the other hand, there was evidence which tended to show that this check was received by the association on the morning of the 29th of April, or not earlier than the afternoon of the 27th of April.   On the trial the association requested the district court to instruct the jury that " Plaintiff having not paid such assessment at or before maturity, his certificate ceases to be in force and effect until the payment actually reached the secretary at his office in Des Moines, and plaintiff's certificate of membership only becomes valid from the time said secretary received such payment at his office in Des Moines.   If you find from the evidence that the payment was received by the secretary at his office in Des Moines previous to the time that the accident happened to the plaintiff, then the plaintiff is entitled to recover; but if the said payment did not reach the secretary's office in Des Moines until after said accident happened to the plaintiff, then the plaintiff is not entitled to recover in any sum whatever."   This instruction the court refused.   *Held*, (1) That it was not for the district court to say whether the evidence established the fact that the assessment remitted by Burr to the asso-

ciation was received by it prior to the time he was injured; that
was a question which the jury, and the jury alone, had a right
to determine; (2) that Burr's failure to pay the assessment due
the 1st day of April on or before that date did not oust him from
membership in such association, but suspended his right to claim
indemnity from the association for an injury received after the
assessment became due and before such payment was made; (3)
that the nature and objects of the association considered, the re-
tention by the association of the remittance made by Burr was
not evidence that the association waived Burr's default; (4) that
the court erred in refusing to give the instruction.

3. ———: ARBITRATION CLAUSE VOID.   On the trial the association
requested the court to instruct the jury that before Burr could
maintain an action upon the claim he must have procured it to
have been arbitrated by a committee of arbitration as provided
by the articles of incorporation of the association; that such ar-
bitration was a condition precedent to the right of Burr to main-
tain the suit.    This instruction the district court refused.   *Held*,
(1) That the ruling of the district court was correct; (2) that
whatever may be the rule elsewhere, it is the firmly established
doctrine here that if parties to a contract agree that if a dispute
arises between them that such dispute shall be submitted to ar-
bitration, refusal to arbitrate or no arbitration is not a defense
to an action brought on such contract by one of the parties
thereto, as the effect of such agreement is to oust the courts of
their jurisdiction, and is contrary to public policy and therefore
void.

4. **Stare Decisis.**   *Home Fire Ins. Co. v. Bean*, 42 Neb., 537, and
cases there cited, and *Phenix Ins. Co. v. Bachelder*, 32 Neb., 490,
39 Neb., 95, followed and reaffirmed.

ERROR from the district court of York county.   Tried
below before BATES, J.

*Merton Meeker* and *Clark Varnum,* for plaintiff in error:

The National Masonic Accident Association is a mutual
concern, a fact which is determined by the statute under
which it is organized. (*State v. Critchett*, 37 Minn., 13;
*Block v. Valley Mutual Insurance Association*, 52 Ark.,
201; *Masonic Aid Association v. Taylor*, 50 N. W. Rep.
[S. Dak.], 93; *State v. Whitmore*, 75 Wis., 332; *Common-*

*wealth v. Equitable Benevolent Association*, 18 Atl. Rep. [Pa.], 1112.)

Members of mutual insurance companies are conclusively presumed to know what the laws of the organization are, and must act accordingly. (*Pfister v. Gerwig*, 122 Ind., 567; *Coleman v. Knights of Honor*, 18 Mo. App., 189; *Coles v. Iowa State Mutual Ins. Co.*, 18 Ia., 425; *Fugure v. Mutual Society of St. Joseph*, 46 Vt., 368; *People v. St. George Society of Detroit*, 28 Mich., 261; *Sperry's Appeal*, 116 Pa. St., 391; *Osceola Tribe No. 11 Independent Order of Red Men v. Schmidt*, 57 Md., 98; *Belleville Ins. Co. v. Van Winkle*, 12 N. J. Eq., 335; *Hanf v. Northwestern Masonic Aid Association*, 45 N. W. Rep. [Wis.], 315; *Hood v. Hartshorn*, 100 Mass., 117; *Rowe v. Williams*, 97 Mass., 163; *Davenport v. Long Island Ins. Co.*, 10 Daly [N. Y.], 535; *Delaware & Hudson Canal Co. v. Pennsylvania Coal Co.*, 50 N. Y., 250; *Lafond v. Deems*, 81 N. Y., 507; *Hudson v. McCartney*, 33 Wis., 331; *Herrick v. Belknap*, 27 Vt., 673; *United States v. Robeson*, 9 Pet. [U. S.], 319; *Trott v. City Ins. Co.*, 1 Cliff. [U. S.], 439; *Viney v. Bignold*, 20 Q. B. Div. [Eng.], 172; *Holland v. Supreme Council Chosen Friends*, 25 Atl. Rep. [N. J.], 367.)

Even an old line insurer is not liable during default in premiums. (*Phenix Ins. Co. v. Bachelder*, 32 Neb., and citations.)

There was and could have been no waiver of the provisions of the by-laws as to time of payment. (*Hale v. Mutual Fire Ins. Co.*, 6 Gray [Mass.], 169; *Brewer v. Mutual Fire Ins. Co.*, 14 Gray [Mass.], 203; *German Ins. Co. v. Heiduk*, 30 Neb., 288; *Dawes v. North River Ins. Co.*, 7 Cow. [N. Y.], 461.)  Arbitration was a condition precedent to suit. (*Canfield v. Maccabees*, 87 Mich., 626; *Van Poucke v. St. Vincent De Paul Society*, 63 Mich., 378; *Anacosta Tribe of Red Men v. Murbach*, 13 Md., 91; *Toran v. Howard Association*, 4 Pa. St., 519; *Woolsey v. Independent Order of Odd Fellows*, 61 Ia., 492; *Rood v.

*Railway Passenger & Freight Conductors Mutual Benefit Association,* 31 Fed. Rep., 62; *Bauer v. Samson Lodge, Knights of Pythias,* 102 Ind., 262; *Leech v. Harris,* 2 Brewster [Pa.], 571; *Osceola Tribe No. 11 Independent Order of Red Men v. Schmidt,* 57 Md., 98; *Harrington v. Workingmen's Building Association,* 70 Ga., 340; *Old Saucelito Land & Dry Dock Co. v. Commercial Union Assurance Co.,* 5 Pac. Rep. [Cal.], 232; *Perkins v. United States Electric Light Co.,* 16 Fed. Rep., 513; *Smith v. Boston, C. & M. R. Co.,* 36 N. H., 458; *Holmes v. Richet,* 56 Cal., 307; *Haley v. Bellamy,* 137 Mass., 357; *Palmer v. Clark,* 106 Mass., 373; *Hood v. Hartshorn,* 100 Mass., 117; *Rowe v. Williams,* 97 Mass., 163; *Davenport v. Long Island Ins. Co.,* 10 Daly [N. Y.], 535; *Delaware & Hudson Canal Co. v. Pennsylvania Coal Co.,* 50 N. Y., 250; *Lafond v. Deems,* 81 N. Y., 507; *Hudson v. McCartney,* 33 Wis., 331; *Herrick v. Belknap,* 27 Vt., 673; *United States v. Robeson,* 9 Pet. [U. S.], 319; *Trott v. City Ins. Co.,* 1 Cliff. [U. S.], 439; *Viney v. Bignold,* 20 Q. B. Div. [Eng.], 172.)

*Sedgwick & Power, contra,* cited, contending that the delay in payment had been waived. (*Schoneman v. Western Ins. Co.,* 16 Neb., 406, and authorities cited; *Phœnix Ins. Co. v. Lansing,* 15 Neb., 494; *Nebraska & Iowa Ins. Co. v. Christiensen,* 29 Neb., 572; *Phenix Ins. Co. v. Bachelder,* 32 Neb., 490; *Grand Lodge v. Brand,* 29 Neb., 644; *Western Horse & Cattle Ins. Co. v. Scheidle,* 18 Neb., 495.

The arbitration clause is invalid. (*German-American Ins. Co. v. Etherton,* 25 Neb., 505; *Western Horse & Cattle Ins. Co. v. Putnam,* 20 Neb., 331; Bacon, Mutual Benevolent Societies, sec. 450.)

RAGAN, C.

The National Masonic Accident Association (hereinafter called the "association,") is a corporation organized under

the laws of the state of Iowa and domiciled in the city of
Des Moines, in said state.   The object of the association is
to furnish its members the advantages of accident insur-
ance.   The association has no capital and no capital stock.
It is purely a mutual institution.   Only members of the
Masonic fraternity can become members of the association.
The association does not issue policies, as that term is gen-
erally understood, but issues to each of its members a cer-
tificate of membership.   The members are divided into
classes according to the hazard of the occupation pursued
by them.   The scheme contemplated by the association is
the payment of a certain sum per week for a specified time
to such of its members as may be temporarily injured; and
if such injury proves to be permanent or results in death,
then the payment to such member or his designated bene-
ficiary of a gross sum of money.   The certificate of mem-
bership issued by the association provides: "This associa-
tion does not agree to pay to any certificate holder or
beneficiary   *   *   *   a greater sum than is realized by
said association from one assessment of two dollars made
and collected upon all members assessable at the date of the
accident."   The only money or capital that the association
ever has is derived from membership fees and dues paid by
and assessments made on its members, and these moneys
are used for the purposes of paying the operating expenses
of the association and paying the weekly or other benefits
due to its members.   The certificate of membership also
provides: "To keep this certificate in force all assessments
and dues must be paid within thirty days of the date of
the notice from the secretary calling therefor."   The affairs
of the association are conducted by a board of directors
chosen annually from among its members, each member of
the association being entitled to cast one vote for the elec-
tion of the directory.   This vote may be cast either in
person by the member or his proxy.   A small membership
fee is required to be paid by each person on his becoming

a member of the association, and each member is required to pay to the association the further sum of one dollar on the 1st days of January, April, July, and October of each year. These moneys are used in defraying the operating expenses of the association so far as they may be necessary to that purpose, and the surplus is applied to the payment of benefits and death claims. When proof of the death or injury by accident of any member is received by the association, if there are not sufficient funds in the treasury to pay the benefits or death loss, an assessment is levied upon each member of the association for that purpose.

The by-laws of the association provide: "Information of the amount of each required payment—assessment for the payment of benefits or death losses—and of the time when the same is to be paid shall be given by the secretary to each member by mailing a written or printed notice to him, postage prepaid, at his last given post-office address, at least thirty days prior to the maturity of such payment. Notice so given shall be full legal notification of such payment and it shall thereupon be the duty of each member to promptly pay the same to the secretary at his office in Des Moines, Iowa, on or before such time of maturity. If any member shall fail to pay any required payment on or before the day so fixed his certificate and membership shall cease to be of any force or validity, and can only be revived by payment thereof. No indemnity or benefits of any kind shall be paid for or on account of any injury received between the time when the delinquent payment became due and the time when the same is received by the secretary at his office." The articles of incorporation of the association also provide: "Disputed claims shall be adjusted as follows: Should such a claim arise it shall be referred to a committee of three, all of whom shall be master Masons, one to be chosen by the assured or his representative, one by the association, and the two so chosen shall select the third; none of whom shall be relatives of

the assured or have any pecuniary interest in the claim. No suit shall be brought upon any disputed claim before the same shall have been arbitrated by such committee; and the award of such committee shall be final and conclusive upon the claimant and the association."

On the 17th day of April, 1890, George F. Burr was accepted as a member of the association and a certificate of membership of that date duly issued to him. On the 14th of February, 1891, the board of directors of the association made an assessment of three dollars upon each member of the association for the purpose of raising money to pay the expenses of the association and benefits to members who were justly entitled thereto. On or before the 1st of March, 1891, the secretary of the association mailed in the city of Des Moines, postage prepaid, a notice of this assessment addressed to Burr at his post-office in York, Nebraska. The notice stated the amount of such assessment, and that it would be due and payable at the office of the secretary on the 1st day of April, 1891. Burr did not pay this assessment on or prior to April 1st, 1891. About noon of the 27th day of April, 1891, Burr was injured and made claim to the association for the weekly benefit which it pays to its injured members. The association refused to pay the benefits, and Burr brought this action against it in the district court of York county to recover the benefits which he alleged he was entitled to be paid by the association as the result of his injury and his membership in such association. He had a verdict and judgment and the association has prosecuted to this court a petition in error.

1. The evidence is undisputed that Burr was injured about noon on the 27th day of April, 1891; that an assessment of $3 was levied against him and all other members of the association by its board of directors on or about the 14th of February, 1891, for the purpose of raising money to pay the operating expenses of the association and benefits to certain of its members who were entitled thereto; that

the secretary of the association mailed a notice of this
assessment to Burr, with the postage prepaid, at Des
Moines, Iowa, and addressed to Burr, at York, Nebraska,
on or before the 1st day of March, 1891; that this assess-
ment was due and payable at the office of the secretary of
the association in Des Moines, Iowa, on the 1st day of
April, 1891; that Burr did not pay this assessment on or
before that date. There is some evidence in the record, on
behalf of Burr, which tends to show that on the 25th of
April, 1891, he mailed a letter at York, Nebraska, directed
to the association, or its secretary, in Des Moines, Iowa,
containing an ordinary check drawn by him on a bank for
$3 to pay the assessment which had matured the 1st of
April, and that ordinarily such letter and check would reach
Des Moines on the evening of the 26th or on the morning
of the 27th of April. On the other hand, the evidence
tends very strongly to show that the check which Burr sent
to the association to pay the assessment due April 1, was
received by the association on the morning of the 29th of
April, 1891, or at least after noon of the 27th of April,
1891. With this evidence before it the association re-
quested the district court to instruct the jury: "Plaintiff
having not paid such assessment at or before maturity his
certificate ceases to be in force and effect until the payment
actually reached the secretary at his office in Des Moines,
and plaintiff's certificate of membership only becomes valid
from the time said secretary received such payment at his
office in Des Moines. If you find from the evidence that
the payment was received by the secretary at his office in
Des Moines previous to the time that the accident happened
to the plaintiff, then the plaintiff is entitled to recover; but
if the said payment did not reach the secretary's office in
Des Moines until after said accident happened to the plaint-
iff, then the plaintiff is not entitled to recover in any sum
whatever." The district court refused to give this instruc-
tion, but peremptorily instructed the jury to return a ver-

dict for Burr for the amount claimed in his petition.
The learned district court was wrong in refusing to
give the instruction asked and erred in instructing the
jury to return a verdict for Burr.  The relations ex-
isting between the association and Burr and all its
other members is a contractual one, and the contract
of the association with Burr and its other members is
made up of the articles of incorporation, the by-laws
thereof, and the certificate of membership of the members.
(*Holland v. Supreme Council of the Order of Chosen
Friends*, 25 Atl. Rep. [N. J.], 367.)  By the articles and
by-laws of the association and the terms of the certificate of
Burr's membership therein, Burr contracted and promised
to pay the assessment levied against him and which ma-
tured on April 1st on or before that date, and if he made
that payment the association promised him, in case he
should be temporarily injured prior to that time, to pay
him an indemnity of $25 per week for a certain length of
time for time lost as the result of such injury.  The con-
tract between the association and Burr further provided
that if Burr should fail to pay this assessment on the day
it matured that from that day until he did make such pay-
ment his certificate of membership or the force and effect
of it should be suspended; and that he should not be en-
titled to any indemnity or benefits on account of any injury
received by him between the time when the assessments be-
came due, April 1, and the date when the assessment levied
against him should be received by the association at its of-
fice in Des Moines, Iowa.  It was not for the district
court to say whether the evidence established the fact that
the assessment remitted by Burr to the association was re-
ceived by it prior to the time he was injured.  That was a
question which the jury, and the jury alone, had the right
to determine.  Burr's failure to pay the assessment due the
1st day of April on or before that date did not oust him
from membership in such association, but suspended his

right to claim indemnity from the association for an injury he received after the assessment became due and before its payment; but Burr's rights as a member of the association and his claims for an injury received were reinstated at the very moment of time that the association received at its office in Des Moines the assessment paid by Burr. The argument of counsel for Burr here is, and this is perhaps the argument which influenced the court below, that as the association received the assessment remitted by Burr and re-tained it the association thereby waived Burr's default in not paying it on the day it matured, and though Burr's claim to indemnity had been suspended since the 1st of April, the receipt and retention of the assessment by the association annulled the suspension and restored Burr to the same rights he would have occupied had he paid his assessment the day it matured. The answer to this argu-ment is that there is no evidence in the record that would sustain a finding either by a court or a jury that the asso-ciation waived Burr's default in making the payment of this assessment due April 1. It must be borne in mind that this is not an ordinary insurance company which sells insur-ance to whoever will buy, but it is a mutual concern, and it is only by the assessments levied upon all its members that the benefits to which a member is entitled if he be injured, or the death benefits to which his beneficiary is entitled if he shall die from an injury, can be paid. Every member of the association knows and must know this, and if all members of the association refuse to pay assessments levied against them when due the association will have no funds with which to make good its promise to its members and its business would be at an end. A member who fails to pay his assessment when due, though he may afterwards pay it and his rights as a member be reinstated from the time of making such payment, has no cause to complain because his rights as a member and his claims against the association are not made to date back so

as to cover any injury he may have received during the time of his default, for this is his express contract, and it is a reasonable and valid one.   If a member refuses to pay his assessment when due, then the injured member for whose benefit the assessment was levied receives that much less indemnity than he would have received if the defaulting member had paid his assessment, and if the defaulting member, while in default, shall become injured, to require the other members to indemnify him would be to permit the party to a contract who had violated it to enforce it as against a party thereto who had kept all his promises.   Here the contract is that all the members must pay their assessments in order that if one be injured he may be indemnified for loss of time.   One member is injured and one or some members refuse to pay their assessments and the injured party's indemnity is diminished by so much.   On what principle of law or equity then can the defaulting members who are injured during their default claim that the other members should indemnify them for the injury received while in default?   *Phenix Ins. Co. v. Bachelder*, 32 Neb., 490, was a suit on a fire insurance policy issued by an ordinary capitalized corporation.   The policy contained a clause to the effect that if the insured should fail to pay his premium note at the time it matured then the policy should cease to be in force and remain null and void during the time the note remained unpaid after maturity, but that the payment of the premium should revive the policy and make it good from the date of the payment of the premium note.   This court, speaking through the present chief justice, said: "The clause referred to is not unreasonable.   It is but fair and just that while the insured is in default of the payment of his [premium] note the company should not be liable for loss, when the parties have so agreed."

2.   The association also requested the court to instruct the jury to the effect that if they found from the evidence

that Burr was a member of the association, that he made the claim in suit against the association, and that such claim was disputed by the association, that then, before Burr could bring an action upon the claim, he must have procured the claim to have been arbitrated by a committee of arbitration raised as provided by the articles of incorporation of the association; and that such arbitration was a condition precedent to the right of Burr to maintain an action in the courts upon the claim. This instruction the district court refused, and correctly so. Whatever may be the rule elsewhere it is now the firmly established doctrine here that though the parties to a contract provide that if a dispute arise between them that such dispute shall be submitted to arbitration, refusal to arbitrate or no arbitration is not a defense to an action brought on such a contract by one of the parties thereto, as the effect of such agreement is to oust the courts of their legitimate jurisdiction and is contrary to public policy and therefore void. This was the rule announced in the *German-American Ins. Co. v. Etherton*, 25 Neb., 505. It was followed in *Union Ins. Co. v. Barwick*, 36 Neb., 223, and again reaffirmed in *Home Fire Ins. Co. v. Bean*, 42 Neb., 537. In the latter case HARRISON, J., speaking for the court, said: "A provision in a policy that no suit or action against the insurer shall be sustained in any court of law or chancery until after an award shall have been obtained by arbitration, fixing the amount due after the loss, is void; the effect of such provision being to oust the courts of their legitimate jurisdiction."

For the error of the district court in refusing to give the instruction first above quoted its judgment must be and is reversed and the cause remanded.

REVERSED AND REMANDED.