OVERLAND CONSTRUCTORS, INC., APPELLEE, V. THE MILLARD SCHOOL DISTRICT, SCHOOL DISTRICT NO. 17, DOUGLAS COUNTY, NEBRASKA, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, KIRKHAM-MICHAEL & ASSOCIATES, INC., THIRD-PARTY DEFENDANT, APPELLEE.

369 N.W.2d 69

Filed June 14, 1985.   No. 84-241.

Rjean K. Knowles and Frank M. Schepers of Young & White, for appellant.

David D. Ernst and John H. Cotton of Gaines, Otis, Haggart, Mullen & Carta, for appellee Overland Constructors.

Dean F. Suing and Moira B. White of Katskee & Henatsch, for appellee Kirkham-Michael & Associates.

KRIVOSHA, C.J., CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

This is a suit instituted by Overland Contractors, Inc. (Overland), seeking a declaration as to whether Overland or the Millard School District (School District), for which Overland constructed an elementary school building, was obligated to pay certain charges imposed by the Metropolitan Utilities District (M.U.D.). Overland maintained that the charges imposed by M.U.D. were the obligation of the School District. The School District, on the other hand, maintained that the charges were fees which, under the terms of the project contract, were to be paid by Overland. After the suit was commenced the School District obtained leave to implead

Kirkham-Michael & Associates, Inc., the architect for the project. The School District maintained that, while it believed that the M.U.D. charges should be paid by Overland, if the School District was obligated to make the payments to M.U.D., then the architect should be required to indemnify the School District.

Following trial, the district court for Douglas County, Nebraska, held that the M.U.D. charges were the obligation of the School District and not Overland. The district court also held that the architect was not obligated to indemnify the School District. It is from that decision that the School District appeals to this court. We believe that the judgment of the district court must be affirmed except as otherwise modified.

The School District has separated its assignments of error into two divisions. The first division relates to alleged errors committed by the district court with regard to the suit brought by Overland against the School District. The second division relates to alleged errors committed by the district court with regard to the School District's claim against the architect.

The assignments of error with regard to Overland are essentially as follows: (1) That the district court erred in failing to find as a matter of law that the contract between Overland and the School District was unambiguous and therefore not subject to explanation by parol evidence; (2) That the district court erred in failing to find that the project contract required Overland to pay the M.U.D. charges either because the contract clearly imposed that obligation upon Overland or because the architect, pursuant to an arbitration clause contained in the contract, previously determined so; and (3) That the district court erred in refusing to permit representatives of the architect to testify regarding the usual and customary arrangement as to payment of charges such as the M.U.D. charges.

While there is controversy regarding the law applicable in this case, there appears to be little disagreement concerning the facts. On October 6, 1980, the School District entered into an agreement with the architect in which the architect agreed to prepare the plans and specifications and all necessary documents, administer the construction contract, provide explanations of the drawings and specifications, and provide all

architectural services necessary for the construction of the school.

The architect prepared all of the documents necessary for the project, including the specifications and drawings for the project. The architect also prepared the project contract which is the subject of this litigation.

In late May 1981, bids for the project were submitted by various contractors and were opened by the architect. Some of the bids indicated that the M.U.D. charges or some part of them had not been included in the bid. Overland's bid did not indicate whether any of the M.U.D. charges had been included. Following an analysis of the bids, the architect recommended that the contract be awarded to Overland for a total cost of $1,672,500. Based upon the architect's recommendation, the School District awarded the contract for the project to Overland.

Shortly after the contract was awarded, a dispute arose as to who was responsible for the payment of the M.U.D. charges in the amount of $21,481.26. When the parties were unable to resolve their dispute, the architect, pursuant to the contract documents, determined that Overland was responsible for the payment of all M.U.D. charges. Overland disagreed with the architect's determination, and a meeting was held. Following that meeting, the architect modified its earlier determination, finding that certain of the charges were the responsibility of Overland, the others the responsibility of the School District. Each of the parties has paid various charges under protest, reserving its right to litigate the issues. With that background in mind we turn to the legal questions presented.

The first issue raised by the parties is the standard of review in this court. The School District asserts that this court should review the record de novo, while Overland argues that this court must review the record in the same manner as it would in any other action at law. The answer seems clear. In *Larutan Corp. v. Magnolia Homes Manuf. Co.*, 190 Neb. 425, 433, 209 N.W.2d 177, 182 (1973), we said:

> This court has treated the determination of factual issues in a declaratory judgment action which would otherwise be an action at law in the same manner as if a jury had

been waived. The findings of the trial court therefore have the effect of the verdict of a jury and will not be set aside unless clearly wrong. See Belek v. Travelers Ind. Co., 187 Neb. 470, 191 N.W.2d 819.

See, also, *Quinn v. Godfather's Investments,* 213 Neb. 665, 330 N.W.2d 921 (1983); *Roth v. School Dist. of Scottsbluff,* 213 Neb. 545, 330 N.W.2d 488 (1983).

We turn to the next question, whether the parties are bound by the determination made by the architect pursuant to an arbitration clause contained in the contract documents. We believe that under the circumstances in this case the parties are not bound. While this court is supportive of parties resolving their differences through arbitration, if possible, we have consistently held that an arbitration agreement entered into *before* a dispute arises, denying to the parties their right to seek the assistance of the courts, is contrary to public policy and is not enforceable. In a long line of cases beginning with *German-American Ins. Co. v. Etherton,* 25 Neb. 505, 41 N.W. 406 (1889), and continuing through *City of Lincoln v. Soukup,* 215 Neb. 732, 340 N.W.2d 420 (1983), we have consistently held that a contract to compel parties to arbitrate *future* disputes and, thus, to oust the courts of jurisdiction to settle such disputes is against public policy and is void. See, also, *National Masonic Accident Association v. Burr,* 44 Neb. 256, 62 N.W. 466 (1895); *Schrandt v. Young,* 62 Neb. 254, 86 N.W. 1085 (1901); *Phoenix Ins. Co. v. Zlotky,* 66 Neb. 584, 92 N.W. 736 (1902); *Wilson & Co., Inc. v. Fremont Cake & Meal Co.,* 153 Neb. 160, 43 N.W.2d 657 (1950); *Heisner v. Jones,* 184 Neb. 602, 169 N.W.2d 606 (1969). The School District directs our attention to the cases of *Simpson v. Simpson,* 194 Neb. 453, 232 N.W.2d 132 (1975), and *Knigge v. Knigge,* 204 Neb. 421, 282 N.W.2d 581 (1979), in support of its contention that arbitration clauses are enforceable. It neglects, however, to note the significant distinction in both *Simpson* and *Knigge.* In each of those cases a dispute had already arisen and the parties agreed to submit their *known* dispute to arbitration. In such cases we do enforce the decision growing out of the arbitration proceeding. The distinction is whether the agreement to submit to arbitration is entered into *before* the dispute arises and

before the parties know the nature and extent of their dispute or whether it is entered into *after* the dispute has arisen and at a time when the parties are aware of the nature of the dispute and have agreed to a method of resolving that dispute. In the instant case the agreement to arbitrate was entered into before the dispute arose and is therefore unenforceable. We, therefore, must turn to the contract itself to determine whether the School District or Overland is liable for the M.U.D. charges.

The five specific charges made by M.U.D. were explained during the trial. According to a representative of M.U.D., the charges and the basis of the charges are as follows:

1. A "capital facilities charge." This is a charge which is to recover capital improvement costs on the district's system. The system charges the customer a certain amount per acre for every acre of land the customer improves.

2. A "water main connection charge." This is computed on the basis of a fixed number of dollars times the number of feet of water main abutting the particular property to be served.

3. A "gas main extension charge." This is the cost of extending the gas main to serve the property in question. The charge is based upon "the actual cost of construction of the size main needed to serve the customer."

4. A "gas service charge." This is "the cost of installing the service from the main to the building that is being served."

5. A "gas meter charge." This is "the cost of the meter and the installation of the meter."

With that background we turn to the language of the contract itself. The relevant portions are as follows:

4.7 PERMITS, FEES AND NOTICES

4.7.1 Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit and for all other permits and governmental fees, licenses and inspections necessary for the proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required at the time the bids are received.

The second relevant provision is article 2 of § 15050, which reads: "2.1 The Contractor shall obtain and pay for all fees,

permits and licenses (but not assessments) required by his work
. . . ."

. A third provision which we believe to be relevant is article
4.4.1, which provides:

> 4.4.1 Unless otherwise provided in the Contract
> Documents, the Contractor shall provide and pay for all
> labor, materials, equipment, tools, construction
> equipment and machinery, water, heat, utilities,
> transportation, and other facilities and services necessary
> for the proper execution and completion of the Work,
> whether temporary or permanent and whether or not
> incorporated or to be incorporated in the Work.

The question we must decide is whether any or all of the
charges made by M.U.D. are fees, permits, and licenses, on the
one hand, or assessments, on the other. If they are fees, permits,
and licenses, then, under article 4.7.1 and article 2 of § 15050,
they are to be paid by Overland. On the other hand, if they are
assessments, they are to be paid by the School District.

A second but related question requiring consideration is if
the charges are neither fees, permits, or licenses nor
assessments, who is obligated to pay them?

In connection with these issues the School District argues
that the project contract was unambiguous and therefore the
trial court erred in permitting any parol evidence to be offered
and received. While we may agree that the specific words
contained within the contract are unambiguous, we must still
conclude that the manner in which the terms are to be applied to
the facts in the case is not clear, and therefore we must find that
the contract was ambiguous and subject to parol evidence. By
simply looking at the title of each of the five charges made, one
cannot, without further explanation, determine whether the
item is a charge for a fee, permit, or license, on the one hand, or
an assessment, on the other. In fact, it may be neither, but,
instead, may be part of the construction costs. To that extent,
therefore, parol evidence was admissible in order to assist the
court in determining into which of the various categories, if
any, the M.U.D. charges should be placed. See, *Pawnee
Plastics, Inc. v. American Savings Co.,* 210 Neb. 131, 313
N.W.2d 262 (1981); *Quinn v. Godfather's Investments,* 213

Neb. 665, 330 N.W.2d 921 (1983); *Hansen v. Circle Lake Development Corp.,* 199 Neb. 678, 260 N.W.2d 609 (1977). Specifically, in *Frank McGill, Inc. v. Nucor Corp.,* 195 Neb. 448, 238 N.W.2d 894 (1976), we were presented with a case not dissimilar to the case at bar. In that case we specifically noted that while the language of the contract was not ambiguous, the manner in which it was to be applied was and that therefore parol evidence was admissible. The district court did not commit error by permitting parol evidence to be offered to explain the charges.

The district court, in applying the facts of this case to the language of the contract, concluded that none of the five items charged by M.U.D. were fees, permits, or licenses and therefore were not required to be paid by Overland. We agree with the district court's conclusion that the items were not for fees, permits, or licenses. We do not agree, however, that as a matter of law all of the charges should be paid for by the School District. The first two items clearly appear to be, by definition, in the nature of assessments or at least charges intended to permit M.U.D. to recover system-wide expenses and therefore, under the provisions of the contract, to be the obligation of the School District. Based upon what little evidence was produced, the charges seem to be related to the fact that the School District was improving its property and had no relationship to work directly being done in the construction. To that extent they were very much like assessments on real estate. The district court's determination, therefore, that the School District should be required to pay the capital facilities charge and the water main connection charge was correct.

A different result must be reached as to the remaining three charges. All three, the gas main extension charge, the gas service charge, and the gas meter charge, were incurred by reason of work actually performed in providing the building with gas service. Absent this construction, the building would have been without gas service and would have been incomplete as a school. These charges were merely costs incurred in making the heating system operative. We therefore believe that as a matter of law these last three charges fall within the provisions of article 4.4.1, which provides that the contractor shall pay for

such labor and materials. Therefore, Overland is obligated to pay the M.U.D. charge for the gas main extension, gas service charge, and gas meter charge.

That leaves us, then, with the claim by the School District against the architect. The School District maintains that the district court erred in not holding the architect liable to the School District because (1) the architect neglected and refused to make adequate provisions in the project contract for the payment of M.U.D. charges by Overland; (2) the architect neglected and refused to prepare and implement a project contract which was capable of producing a completed facility at a stated cost; (3) the architect neglected and refused to implement and enforce its contractual determination that the contractor, not the owner, was responsible for the M.U.D. charges; and (4) the district court concluded that the evidence adduced by the owner on the standard of care required of an architect under the facts of this case was inadequate to show that standard of care.

Turning first to the question of whether the architect was negligent in failing to implement the arbitration provisions of the contract, we can quickly dispose of that matter. Having already determined that such provision is not binding, the architect could not be negligent in failing to do that which is not enforceable. Regarding the School District's claim that the architect failed to produce a building within the estimated cost, we are unable to find that the evidence supports that claim. In the instant case the School District obtained a building at a cost which was within less than 1 percent of the amount estimated by the architect. It would seem that one must say that a building constructed for an amount which exceeds its estimated cost by less than 1 percent is constructed for its estimated cost. The architect was not, in this case, acting as a guarantor, and the School District obviously recognized that fact. See *Durand Associates, Inc. v. Guardian Inv. Co.*, 186 Neb. 349, 183 N.W.2d 246 (1971). See, also, *Palmer v. Dorn*, 196 Neb. 360, 243 N.W.2d 57 (1976). The School District's claim in this regard is simply without merit and must be overruled.

That leaves us with the last question, as to whether the district court erred in concluding that the evidence adduced by

the School District on the standard of care required of an architect under the facts of this case was inadequate to show that the architect failed to meet the required standard of care. We have examined the record and believe that the district court was correct.

In *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 125, 362 N.W.2d 35, 42 (1985), we said: "A professional act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." An architect performs professional services, as do lawyers, doctors, accountants, and investment advisers. *Id.* If the standard of conduct for an architect is analogous to that of other professions, including doctors, then in determining whether the architect was negligent in failing to specifically set out the contractor's responsibility for the M.U.D. charges in the contract, the test is whether the architect has exercised that degree of skill and diligence ordinarily exercised under like circumstances by architects in good standing in the same or similar communities. See, *Hanzlik v. Paustian*, 216 Neb. 575, 344 N.W.2d 649 (1984); *Kortus v. Jensen*, 195 Neb. 261, 237 N.W.2d 845 (1976). The question of whether an architect has failed to perform in accordance with the standards of the profession is a matter which must be proved by expert testimony and cannot be left to lay witnesses. The question as to whether the architect in this case should have required Overland to pay various charges imposed upon the School District by M.U.D. is not a matter which a lay witness can determine. The School District cites to us the case of *Aetna Insurance Co. v. Hellmuth, Obata & Kassabaum, Inc.*, 392 F.2d 472 (8th Cir. 1968), for the proposition that expert testimony is only required where an ordinary layman cannot completely understand the particular factual situation. We believe, however, that *Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523 (8th Cir. 1980), better explains the rule. In *Bartak, supra* at 530, the U.S. Court of Appeals for the Eighth Circuit said:

> Further, in the majority of cases involving an architect's liability for harm, there can be no finding of negligence

unless there is expert testimony to support it, because laymen would be unable to understand highly technical architectural requirements without hearing other architects testify as to those requirements. *Aetna Insurance Co. v. Hellmuth, Obata & Kassabaum, Inc., supra*, 392 F.2d at 478. There is, however, a "common knowledge" exception to the requirement of expert testimony; the jury is competent to pass on issues of negligence that do not require a knowledge of professional skills. *Id.*; . . . .

The court then went on to hold that proof of alleged negligence in planning or document preparation requires "a technical analysis of the specifications, drawings and manufacturer's specifications that was beyond the competence of ordinary lay persons, *id.*," and therefore required expert testimony. The question raised by the School District in this case was not a matter of "common knowledge." There was no expert testimony with regard to the preparation of the contract documents. The questions that were asked of the architects concerned opinions as to the meaning of this particular contract and who should be required to pay the charges. That is not the same as producing expert testimony to establish whether the architect's conduct in preparing these plans and specifications failed to meet the standard of care and conduct required to be performed by an architect. There being no evidence on the applicable standard of care, the district court was correct in refusing to address the School District's allegation of negligence on the part of the architect in preparing the contract documents.

For these reasons, therefore, the decision of the district court is affirmed in all respects except that Overland is directed to pay the gas main extension charge, the gas service charge, and the gas meter charge, or to reimburse the School District for the payment of those charges.

AFFIRMED AS MODIFIED.