**SCHOOL DISTRICT NO. 11 a/k/a South Sioux City Schools, Dakota County, Nebraska, Plaintiff-Appellee,**

v.

**SVERDRUP & PARCEL AND ASSOCIATES, INC., Defendant-Appellant.**

No. 85–1735.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 10, 1986.

Decided July 24, 1986.

Dean F. Suing, Omaha, Neb., for defendant-appellant.

Thomas C. Lauritson, Omaha, Neb., for plaintiff-appellee.

Before ARNOLD and FAGG, Circuit Judges, and OLIVER,* Senior District Judge.

PER CURIAM.

## I.

The School District of South Sioux City, Nebraska filed this diversity action against Sverdrup & Parcel and Associates, Inc. (S & P), Western Waterproofing Company (WWC), and Minnesota Mining and Manufacturing Company (3M) on December 17, 1982. The case involves a re-roofing contract for the Senior High School, the E.N. Swett Elementary School and the Lewis and Clark elementary schools were constructed in 1960. The high school was constructed in 1968. As a result of leaks in the roofs of all three schools in 1978, the School District employed S & P to determine the cause of the leaks and to propose solutions for correction of the problems.

After preliminary reports and discussions S & P and the School District entered into a contract under which S & P was to "engineer, design, and supervise repairs to these roofs which will effect a long-time solution to said leakages." Minnesota Mining and Manufacturing Company (3M) materials were used and labor was provided by WWC.

On the morning trial was to commence, 3M and the School District announced a settlement of its claims against 3M for $150,000. During the course of the trial the School District's claims against WWC were settled in accordance with a stipulation of settlement which we later discuss in some detail. The case went forward against S & P as the sole defendant.

The jury returned a verdict against S & P in the amount of $573,606 in regard to the Senior High School and for $191,202 in regard to two elementary schools. The district court granted in part a post-trial motion for remittitur in the amount of the $150,000 3M settlement. The district court, however, refused to grant any remittitur in regard to the WWC settlement. Judgment for $806,010 was therefore entered against S & P.

Appellant S & P contends on appeal that (1) the verdict and judgment rendered by the district court is not supported by evidence for the reason that there is no competent testimony as to the standard of care of an architect or proof as to amount of damages sustained; (2) the verdict rendered by the jury in the trial court is excessive for the reasons that it includes speculative damages and damages for mental suffering which are not recoverable in Nebraska; (3) the trial court abused its discretion in denying defendant's motion for a new trial or, alternatively, in not ordering a remittitur in the amount of the School District's beneficial use to date; and (4) the trial court abused its discretion in denying defendant's motion for a new trial or, alternatively, in not ordering a remittitur in the amount of the School District's settlement with WWC.

We conclude that the district court should be affirmed on all issues except the fourth issue stated. In regard to that issue, we conclude that the case should be

* The HONORABLE JOHN W. OLIVER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

remanded with direction that the district court direct the entry of a judgment that will reduce plaintiff's judgment in the amount of $85,000 to reflect the School District's settlement with WWC.

## II.

■ Appellant argues in support of the first issue it raised on appeal that Jennings, as an engineer, was not qualified to offer an opinion in regard to the performance of an architect, and that the district court erred in overruling appellant's objections to his testimony. Appellant therefore argues that appellee failed to prove that S & P breached the standard of care of an architect.

Dwight Jennings, a civil engineer, testified as an expert witness for the plaintiff over appellant's repeated objections. Jennings is the founder and president of an independent engineering company which does consulting work related to roofing and waterproofing exclusively. Jennings testified that for over twenty years he has been "actively involved in investigating roofing problems, looking at different kinds of products, evaluating quality of control on new construction and reroofing ... reroofing design, designing systems for correcting problems or restoring roofs to better life." (Tr. 457).

Jennings inspected and tested all the roofs before testifying. He testified as to what he considered were various design defects and construction deformities in all three of the school roofs. He further testified that in his opinion, the problems should have been observable by an architect or engineer inspecting the work at the time of installation and that the products designed and specified by S & P were not suitable. He further testified that the roofing design of S & P did not meet the standard of an average competent architect or engineer in the area in 1979.

Jennings also testified at length concerning damages to the School District. The total of damages he detailed was $1,082,-000. He testified and provided charts on the various materials, labor, design fees, and other components to the award.

Appellant cites *Bartak v. Bell-Galyardt and Wells, Inc.*, 629 F.2d 523 (8th Cir. 1980), and *Overland Constructors v. Millard School Dist.*, 220 Neb. 220, 369 N.W.2d 69 (1985), to support its argument that only an architect, rather than an engineer, should be permitted to testify as to the standard of an average competent architect. Appellant's argument is untenable. For both those cases simply hold that an expert witness, rather than lay persons, must be called to support a plaintiff's claim in cases which involve highly technical architectural requirements. Both *Bartak* and *Overland Constructors* involved cases in which no expert witness was called by the plaintiff.

In this case, the School District called a civil engineer with a great deal of experience in roofing as its expert witness. His specialized knowledge assisted the trier of fact to understand the evidence and to determine facts in issue. We conclude that the district court committed no error when it admitted Jennings' testimony in evidence. *Brown v. Syntex Laboratories, Inc.*, 755 F.2d 668, 672 (8th Cir.1985). The district court is therefore affirmed in regard to the first issue presented on appeal.

## III.

■ Appellant argues in support of its second issue raised on appeal that the verdict of the jury was excessive in that it was neither supported by nor did it conform to the evidence; that the damages, if any, were a simple matter of mathematical computation; that the jury was allegedly permitted to assess damages for pain and suffering; and that in any event the evidence adduced at trial did not support the verdict. Appellant relies primarily on *Glenwood Irrigation Company v. Vallery*, 248 Fed. 483 (8th Cir.1918); *Mutual Benefit Health and Accident Association v. Thomas*, 123 F.2d 353, 356 (8th Cir.1941); *Northern v. McGraw-Edison Co.*, 542 F.2d 1336, 1349 (8th Cir.1976); and *Stineman v. Fontbonne College*, 664 F.2d 1082 (8th Cir.

1981), together with a number of Nebraska cases which need not be cited.

We conclude that appellant's argument in support of the second issue raised by it on appeal is untenable. A jury verdict may not be overturned for insufficient evidence unless it is clearly contrary to the evidence. *LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342, 353 (8th Cir.1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 138. A verdict may not be considered to be excessive unless there has been a "plain injustice" or a "monstrous" or "shocking" result. *Solomon Dehydrating Co. v. Guyton*, 294 F.2d 439, 447–48 (8th Cir.1961).

The jury returned a total verdict of $956,010 for damages for all three schools. Appellee adduced testimony that the total damage to all three buildings was $1,082,000. The fact that the jury returned special verdicts that were not precisely equivalent to the testimony of appellee's expert witness is immaterial. The instructions requested by the parties and those given by the district court treated the question of damages as a whole. The forms of special verdict submitted for the jury's use, without objection by either side (Tr. 554 and 555), did require a breakdown of the damages for each of the three buildings individually. The district court concluded, and we agree, that the total award was fully supported by the evidence.

■ Appellant further argued that the testimony of appellee's expert in regard to a $90,000 contingency expense component was speculative. We disagree. The law does not require mathematical precision in proof of a loss; proof to a reasonable certainty is sufficient. *LeSueur Creamery, supra,* 660 F.2d at 349–50; *Pillsbury Co. v. Illinois Central Gulf R.R.,* 687 F.2d 241, 246 (8th Cir.1982). The difficulty of proving a precise amount will not preclude recovery as long as there is a reasonable basis to approximate the amount. *LeSueur Creamery, supra,* 660 F.2d at 351.

The expert witness testified about the contingency expense at length on both direct and cross-examination. The jury was fully advised of all of the elements of the damages claimed and could calculate a suitable award accordingly. Appellant did not propose any alternative method of calculating damages. We conclude that such testimony was not speculative and that appellant's argument is untenable.

■ Appellant's additional argument in regard to Instruction No. 13 in support of the second issue deserves little comment. One portion of that instruction, in accordance with a request joined in by appellant, instructed the jury that it was entitled to consider any inconvenience or disruption that the school district may have suffered from the water leaks in its consideration of the issue of damages. Appellant argues that that portion of Instruction No. 13 permitted the jury to award damages other than compensatory damages.

We conclude that the instruction did not permit the appellee to recover "damages for mental suffering" as appellant stated in the second issue it raised on appeal. We have carefully considered all of the district court's instructions on damages and conclude that it did not commit any error in that regard.

### IV.

■ Appellant's third issue on appeal presents the question of whether the district court abused its discretion in refusing to grant appellant a new trial, or alternatively, in failing to order a remittitur in the amount of the school district's alleged beneficial use of the roofs to date. Appellant is not entitled to a new trial for reasons that have already been stated. Nor is appellant entitled to the alternative relief requested.

Appellant contends in the alternative that the district court committed reversible error in failing to submit an instruction requested by the appellant which would have advised the jury that "the three roofs in question had an expected period of use *of ten years* and that the jury was required to deduct the value of the beneficial use of the roofs to date from the cost of replace-

ment." (Emphasis added). Appellant concedes, however, that the jury was instructed that it should deduct from the reasonable costs necessary to make the roof system of the particular school conform to the requirements of the contract "any reasonable amount which you believe represents the benefit plaintiff received to date from the roofs as installed, if plaintiff has received any such benefit." Instruction No. 13.

The district court's notation on appellant's requested instruction, which would have directed the jury to find that the roofs had an expected period of serviceable use "of ten years" stated that appellant's requested instruction had been "given in substance." We agree.

Appellant's argument is necessarily based on the theory that it was entitled to a directed verdict in regard to a ten-year period of serviceable use of the roofs. We conclude that appellant was not entitled to have the jury so directed and that the district court appropriately left the question of what beneficial use, if any, the appellee may have enjoyed to the jury for its determination.

We conclude that none of the arguments made in support of the third issue raised by the appellant are tenable.

## V.

■ Appellant alternatively contends in the fourth issue raised on appeal that the district court should have ordered a remittitur in the amount of the appellee's settlement with co-defendant WWC. We agree.

Although the district court granted a remittitur in the amount of the settlement appellee made with 3M, it refused to grant any remittitur in regard to appellant's settlement with WWC.

The district court properly relied on *Kassman v. American University*, 546 F.2d 1029 (D.C.Cir.1976), to support the remittitur it ordered in regard to the 3M settlement. The School District relies on that case and the recent Third Circuit decision in *Rocco v. Johns-Manville Corp.*, 754 F.2d 110 (3d Cir.1985), to support the district court's refusal to order a remittitur in connection with the WWC settlement. We conclude that neither case supports a conclusion that the WWC settlement should be treated in any manner different from the treatment the district court properly gave the 3M settlement.

In support of the different treatment given the WWC settlement, the district court reasoned that WWC, "in effect, agreed to do no more than it was already obligated to do under the agreements" made at the time of contracting and (2) the agreement made in settlement is in the nature of an insurance agreement and falls within the reach of the collateral source rule. (Opinion, p. 6). Examination of the documents under which appellant's claim against WWC was settled does not support the district court's conclusion.

An order was entered on the appellee's motion by the late Judge Albert G. Schatz on March 13, 1985 dismissing the School District's case against WWC without prejudice. Appellee's motion was made pursuant to a stipulation of settlement attached thereto. That stipulation recited that WWC had made an alternative offer to either pay appellee $85,000 or to perform certain repair work in lieu of the $85,000 cash settlement. The stipulation contained detailed recitations in regard to the repair work to be performed and also recited that WWC would also abide by the terms and conditions of an agreement it had entered into with the appellee on November 1, 1979 for the remaining term of years provided in that agreement.[1]

---

**1.** Under the stipulation of settlement WWC agreed in regard to all three roofs to:

    (a) Reconstruct or remove such foam areas as it deems necessary on said roofs; and

    (b) Refoam or reslope such areas of the roofs on said schools as it deems necessary; and

    (c) Recoat the entire roof surfaces of all three school roofs with an amount of Dow Silicone Roof Coating or other suitable material necessary to make the roofs commercially weather resistant for the balance of the term of the Agreement to Maintain Weathercoating; and

We are satisfied that appellee did not agree to dismiss its action against WWC solely in consideration of WWC's agreement to abide by the terms and conditions of the November 1, 1979 agreement. Although appellee argues to the contrary, WWC may have been under legal obligation to abide by the terms and conditions of that agreement in any event. We need not reach that question for the reason that under the stipulation of settlement WWC agreed to perform all the new work called for in subparagraphs (a), (b) and (c) of that agreement before August 15, 1985. It is also clear that the alternative $85,000 offer made by WWC was not conditioned on a release from the School District of WWC's obligations under the agreement to which reference was made in subparagraph (d) of the stipulation of settlement.

We are satisfied that the parties understood that the alternative offer of $85,000 or WWC's performance of the additional repair work specified in the stipulation, were substantially of equal value. Certainly the School District would not have rejected WWC's cash offer of $85,000 unless it concluded that its election to accept WWC's alternative offer to repair afforded the School District the greatest consideration. We are satisfied that WWC's alternative offer to repair must be said to be worth at least $85,000 to the School District and that the appellant is accordingly entitled to a remittitur in that amount.

We therefore conclude that WWC's settlement was not within the collateral source rule and that the district court should have granted appellant's motion for remittitur in regard to the WWC settlement.

Accordingly, the district court is affirmed in all respects, excepting only its refusal to grant appellant a remittitur of $85,000 to reflect the WWC settlement. The case is remanded to the district court with instructions for it to enter an order directing the Clerk to enter a new judgment which will reflect a further remittitur in favor of the appellant in the amount of $85,000.00.

It is so ordered.

---

(d) Abide by the terms and conditions of the Agreement to Maintain Weathercoating each dated November 1, 1979, for the balance of the remaining term of years under said Agreement.

The stipulation further proved that "Western Manufacturing agrees to perform the work as specified in subparagraphs (a), (b) and (c) above prior to August 15, 1985."