JOHN DAY COMPANY, A NEBRASKA CORPORATION, APPELLANT, V. ALVINE & ASSOCIATES, INC., A NEBRASKA CORPORATION, APPELLEE.

510 N.W.2d 462

Filed July 6, 1993.   No. A-91-1187.

James D. Buser, of Gaines, Mullen, Pansing & Hogan, for appellant.

Thomas J. Guilfoyle, of Frost, Meyers, Guilfoyle & Govier, for appellee.

CONNOLLY, HANNON, and MILLER-LERMAN, Judges.

CONNOLLY, Judge.

This appeal arises from the dismissal of the petition of the John Day Company (John Day), the appellant, seeking damages in contract and in tort from Alvine and Associates, Inc. (Alvine), the appellee. John Day had contracted with an architectural firm for the construction of a building, and the architectural firm had subcontracted with Alvine for mechanical engineering design services. John Day sued Alvine for damages resulting from a problem that developed after

completion of the building in the heating, ventilating, and air-conditioning system designed by Alvine. John Day sued in contract on the theory that it was a third-party beneficiary of the subcontract between the architectural firm and Alvine, and in tort on the theory that it was a third party to whom Alvine owed, and breached, a duty of care. The trial court sustained Alvine's demurrer on grounds that John Day had failed to state a cause of action in either contract or tort. We affirm.

## I. FACTS

John Day contracted with How-Nelsen Associates (How-Nelsen) to provide architectural services for the design and construction of John Day's building at 6263 Abbott Drive, Omaha, Douglas County, Nebraska. How-Nelsen subcontracted with Alvine to provide mechanical engineering design services in connection with the construction of the John Day building. Alvine prepared the specifications for the design and construction of the building's heating, ventilating, and air-conditioning system (HVAC system), a "once through cooling system" in which well water would be pumped from the source, circulated through the system, and then injected into the ground after one pass through the system. Alvine's design specifications called for the use of carbon steel piping to carry the well water through the system.

Almost 1 year after the completion of the John Day building, it was discovered that the carbon steel pipes used in the HVAC system were corroding. A test of the well water used in the system revealed that the water had an excessively high chloride content. A metallurgical consulting service determined that the high chloride content of the well water was a major factor contributing to the corrosion of the entire carbon steel piping system. On the recommendation of the consulting service, John Day replaced the carbon steel piping with heavy plastic piping at a cost of $22,828.83.

John Day filed a petition claiming relief in both contract and tort. In claiming breach of contract, John Day alleged that it was the third-party beneficiary of the subcontract between How-Nelsen and Alvine and that Alvine's failure to test the well water for corrosive agents before ordering the use of carbon

steel piping constituted a breach of its duty to John Day to provide proper, workmanlike, and professional mechanical engineering design services. In claiming professional negligence, the term used in the petition, John Day alleged that the failure of Alvine, a professional mechanical engineering firm, to conduct chemical tests of the well water in the process of designing the HVAC system constituted a breach of its duty to John Day to use the skill and knowledge ordinarily possessed by other professional mechanical engineers in good standing in Douglas County. John Day sought $22,828.83 in damages, plus "other damages," interest, attorney fees, and costs.

Alvine filed a demurrer in which it asserted that John Day had failed to state a cause of action because Alvine was not in privity of contract with John Day and did not owe John Day any legal duty.

The order of the trial court stated that

> both Counts are based upon negligence: Count I is negligent performance of the contract, and Count II is [a] straight negligence action. Since there is no privity [of] contract, there is no duty on the part of [Alvine] to [John Day]. [John Day's] petition does not state a cause of action against [Alvine], and therefore [John Day's] petition should be dismissed.

The trial court sustained Alvine's demurrer and dismissed John Day's petition.

## II. ASSIGNMENTS OF ERROR

John Day assigns two errors which we summarize as follows: (1) The trial court erred in holding that both of John Day's claims against Alvine were based on negligence, and (2) the trial court erred in holding that under a theory of professional negligence, a duty of care ran from Alvine to John Day only if there was privity of contract between those two parties.

## III. STANDARD OF REVIEW

In ruling on a demurrer, the petition is to be construed liberally; if as so construed the petition states a cause of action, the demurrer is to be overruled. *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991).

## IV. ANALYSIS

" 'If from the facts stated in the petition it appears that the plaintiff is entitled to any relief, a general demurrer will not lie.' " *Central Nebraska Public Power and Irrigation District v. Walston*, 140 Neb. 190, 202, 299 N.W. 609, 615 (1941). "[W]hen a petition contains more than one count, and a general demurrer is directed against the entire pleading, and is not limited to a particular count, if any count states a cause of action, such demurrer must be overruled." *Alexander v. Thacker*, 30 Neb. 614, 618, 46 N.W. 825, 826 (1890). Thus, if either of John Day's claims for relief stated a cause of action, then the trial court erred in sustaining Alvine's demurrer.

### 1. THIRD-PARTY BENEFICIARY

In finding that both of John Day's claims for relief sounded in tort, the trial court rejected John Day's argument that it was a third-party beneficiary to the subcontract between How-Nelsen and Alvine.

In *School District v. Thomas*, 51 Neb. 740, 71 N.W. 731 (1897), the Nebraska Supreme Court was confronted with the following scenario: The school district of Beatrice hired W.C. Smith to build two schoolhouses. Smith abandoned the contract and absconded. Completion of the project was assumed by his sureties. The project was completed, and Thomas, a subcontractor on the project, asserted that he was a third-party beneficiary of the contract between the school district and the general contractor. Accordingly, he sued the school district for sums due him for his work on the project. The Supreme Court rejected Thomas' argument:

> It is also argued that the rule "Where a party makes a promise to another for the benefit of a third person, such third person may avail himself of the promise and bring an action thereon . . ." is applicable and may be invoked by [Thomas] as against the school district. There were no portions or elements of the contract between Smith, the original contractor, and the district which . . . contain any promise by the district, made for the benefit of the subcontractor, on which he would be entitled to institute a suit against the district; hence the doctrine to which

reference has been made is of no force here.
*Id*. at 743, 71 N.W. at 732.

The Supreme Court recently reiterated and elaborated on the proposition that one is a third-party beneficiary of a contract only if the other parties entered into the contract for the purpose of benefiting the third party. In order for those not named as parties to the contract to recover thereunder as third-party beneficiaries, it must appear by express stipulation or by reasonable intendment that the rights and interests of such unnamed parties were contemplated and provision was made for them. See *Properties Inv. Group v. Applied Communications*, 242 Neb. 464, 495 N.W.2d 483 (1993). The rights of a third-party beneficiary depend upon, and are measured by, the terms of the contract between the promisor and the promisee. *Id*. The right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, which must affirmatively appear from the language of the instrument when properly interpreted or construed, and liability so appearing cannot be extended or enlarged on the ground alone that the situation and circumstances of the parties justify or demand further or other liability. *Id*.

The pleadings in this case make no mention of provisions in the subcontract between How-Nelsen and Alvine concerning the rights or interests of John Day. Alvine did not agree to design the HVAC system for the benefit of John Day. Alvine performed its service for the benefit of How-Nelsen. John Day was mistaken in characterizing itself as a third-party beneficiary of the subcontract between How-Nelsen and Alvine. The trial court was correct in rejecting that argument.

## 2. PROFESSIONAL NEGLIGENCE

### (a) No Privity

In the absence of an otherwise binding agreement, express or implied, there is no privity of contract between a subcontractor and the property owner who negotiated the original agreement with the general contractor. See *Boyd v. Benkelman Public Housing Authority*, 188 Neb. 69, 195 N.W.2d 230 (1972). John Day argues that this proposition of law does not apply to the case before us because in *Boyd* it was the subcontractor who

had tried to sue the property owner, while in this case it is the property owner, John Day, who wants to sue the subcontractor, Alvine. That distinction is irrelevant. Regardless of which party tries to initiate a lawsuit against the other party, there is no privity of contract between a subcontractor and the property owner who negotiated the original agreement with the general contractor.

### (b) No Liability Without Privity

The crux of John Day's argument is that there can be liability to a third party for professional negligence even though there is no privity of contract between the defendant and the third party. John Day offers authority from other jurisdictions to support this proposition.

The Nebraska Supreme Court has held that barring proof of fraud or other extraordinary facts, lawyers and accountants are liable for negligence only to their clients, with whom they are in privity of contract, and not to third parties. See, *Citizens Nat. Bank of Wisner v. Kennedy & Coe*, 232 Neb. 477, 441 N.W.2d 180 (1989); *Landrigan v. Nelson*, 227 Neb. 835, 420 N.W.2d 313 (1988); *Ames Bank v. Hahn*, 205 Neb. 353, 287 N.W.2d 687 (1980). The Supreme Court also has applied this rule of law to cases involving architects. See *Overland Constructors v. Millard School Dist.*, 220 Neb. 220, 369 N.W.2d 69 (1985).

*Overland Constructors* provides a description of professional service that bears on the instant case: " 'A professional act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.' " *Id.* at 229, 369 N.W.2d at 75. The court went on to recognize architects, lawyers, doctors, accountants, and investment advisers as providers of professional services.

While we find no Nebraska case holding that mechanical engineers fit into the professional class described in *Overland Constructors*, we rely on two considerations in finding that mechanical engineers are professionals for purposes of determining their duty of care to third parties. First, the occupation involves specialized knowledge and skill that is

predominantly intellectual, particularly in the case of designing something like an HVAC system. For purposes of determining professional status and duty of care, we find no meaningful difference between architectural design and mechanical engineering design. Second, in its petition, John Day referred to Alvine as a "professional mechanical engineering firm" and sought negligence damages on grounds that Alvine had breached its duty to John Day to use the skill and knowledge ordinarily possessed by other professional mechanical engineers. Obviously, John Day views Alvine as a provider of professional services, and we concur in that view. We find that mechanical engineering design fits the definition of professional service set out in *Overland Constructors*.

Again, in Nebraska, absent proof of fraud or some other extraordinary facts that would override the general rule, professionals are not liable in negligence to third parties with whom they are not in privity of contract.

John Day is not arguing fraud or any other extraordinary facts. John Day's argument is that the Nebraska Supreme Court has not ruled on the specific issue of whether mechanical engineers are liable in negligence to third parties with whom they are not in privity of contract. Therefore, John Day argues, this is a case of first impression in which this court is free to consider and apply rationales from other jurisdictions in rendering its decision.

Regardless of what other jurisdictions have held, this court is bound by Nebraska Supreme Court precedent, and we find that Nebraska Supreme Court precedent has evolved in a direction that clearly indicates that professionals as defined in *Overland Constructors* are not liable in negligence to third parties with whom they are not in privity of contract.

## V. CONCLUSION

John Day's claim for relief in contract was invalid because John Day was not a third-party beneficiary of the subcontract between How-Nelsen and Alvine. John Day's claim for relief in tort was invalid because Alvine owed no duty of professional care to John Day, a third party not in privity of contract with Alvine for the latter's professional services. Both of John Day's theories of recovery were invalid. We find nothing to save the

petition from the finding that John Day failed to state a cause of action. Therefore, we affirm the judgment of the trial court sustaining Alvine's demurrer and dismissing John Day's petition.

AFFIRMED.