913 F.2d 170
 Anna ELMORE, Plaintiff-Appellee,
v.
Brad CORCORAN, Individually and in his capacity as former
Town Manager; W.H. "Buck" Clemons, Individually
and in his capacity as Chief of Police,
Defendants-Appellants,
v.
TOWN OF NARROWS, Defendant.
 No. 89-2165.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 9, 1990.
Decided Sept. 10, 1990.
 
 Jim Harold Guynn, Jr., Parvin, Wilson, Barnett & Hopper, P.C., Roanoke, Va., (James W. Hopper, Parvin, Wilson, Barnett & Hopper, P.C., Roanoke, Va., on brief), for defendants-appellants.
 Randal John Duncan, Jenkins & Quigley, Radford, Va., (Max Jenkins, Jenkins & Quigley, Radford, Va., on brief), for plaintiff-appellee.
 Before HALL, MURNAGHAN and SPROUSE, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 The action leading to this appeal was filed by Anna Elmore, who claimed that officials in the Town of Narrows, Virginia, violated her constitutional rights by arresting her after she resisted the termination of her water service over a $7.54 billing dispute. After a bench trial, the district court entered judgment against town manager Brad Corcoran and police chief W.H. "Buck" Clemons,[1] holding them jointly and severally liable for $5,000 in compensatory damages, and holding Corcoran liable for $7,000 in punitive damages.[2] Corcoran and Clemons appeal. We reverse.
 
 
 2
 * In the spring of 1987, Elmore lived alone in a house in Narrows, a town of approximately 2,500 people. The Town supplied water, sewer, and garbage collection services to its residents, and charged households that used less than 6,000 gallons of water a flat bimonthly rate of $39.92. In April 1987, Elmore received a bimonthly bill for $47.46. On May 6, she visited Corcoran at the Narrows Municipal Building, where she disputed that she had used more than 6,000 gallons of water, paid the flat rate, and refused to tender the additional $7.54. Corcoran asserts that he agreed to have Elmore's water meter and lines checked for leaks and that she agreed to pay the $7.54 if the metered water consumption on her next bill exceeded the minimum amount.
 
 
 3
 Elmore's June 1987 bill was again more than the minimum amount and carried the $7.54 as arrearage. On June 9, she again visited Corcoran and again refused to pay the disputed $7.54. Corcoran advised her that if she continued in her refusal he would terminate her water service. She walked home. Corcoran, accompanied by a water department employee and by police chief Clemons, then drove to Elmore's house where they found her standing astride a picnic bench over the water meter. Elmore stepped aside when Clemons approached and removed the bench, but when he started to turn off the water, Elmore kicked him. Clemons arrested her, put her in the police car, drove her to the magistrate's office, and obtained warrants for her arrest for striking a police officer and obstructing justice.[3] The criminal charges were subsequently dismissed in county court.
 
 
 4
 A year later, in May 1988, Elmore filed this action in the United States District Court, alleging jurisdiction under "Title 28 U.S.C. Section 1331, 1334, 2201 et seq. and Title 42 U.S.C. Section 1983, 1985, and 1988 and under the Constitution of the United States and, in particular but not limited to, the First, Fifth and Fourteenth Amendments thereto." The complaint was grounded entirely on Elmore's claims of false arrest and/or false imprisonment.[4]
 
 
 5
 The defendants moved to dismiss under Fed.R.Civ.P. 12(b)(6). In opposition, Elmore filed a memorandum reiterating that her complaint alleged a cause of action for false arrest or false imprisonment and requesting permission to amend the complaint, asserting "that upon amending her cause of action, she will be able to prove the elements necessary to sustain an action under Section 1983." At a hearing in August 1988, the court denied the motion to dismiss and "stated to counsel that he had some recollection of a Supreme Court case concerning due process rights in utility service and, without expressing an opinion on the merits of the case, suggested that plaintiff might be able to predicate recovery on this basis." Elmore v. Corcoran, No. 88-0197-R, slip op. at 2 (W.D.Va. Aug. 10, 1989) (denying motion to alter judgment or for new trial).[5] In spite of this guidance from the court, Elmore never amended her complaint.
 
 
 6
 During the one-day bench trial, the evidence presented related primarily to the events leading to Elmore's arrest, the arrest itself, and the subsequent dismissal of criminal charges. However, testimony also referred to the water bill, which stated that it must be paid within thirty days; the amount of notice Elmore received before her water service was terminated; and (briefly) the billing practices of other municipalities in Virginia.
 
 
 7
 The district court held that Elmore "had not sufficiently proved her false arrest claim" and "judgment would be entered for the defendants in this regard." However, the court ruled that Corcoran and Clemons were liable for violating Elmore's right to due process, reasoning that the defendants had no right to terminate her water service because the deadline for paying her bill had not passed;[6] that Elmore had a property right in continued water service; that "her federally-protected Constitutional right was violated by the two Defendants in cutting off her water;" and that the defendants conspired to deprive Elmore of her civil rights.
 
 
 8
 In denying the defendants' motion for new trial, the district court acknowledged that the complaint did not "explicitly predicate its prayer for relief on a violation of due process rights in terminating plaintiff's water." However, finding little prejudice to the defendants, the court deemed the complaint to be amended to include this due process claim.
 
 II
 
 9
 It is axiomatic that the Federal Rules of Civil Procedure allow liberal amendment of pleadings throughout the progress of a case. See, e.g., Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985) (petitioners allowed to amend pleadings before Supreme Court). When, as here, a party has not amended its pleadings, the "failure so to amend does not affect the result of the trial" of issues which have been "tried by express or implied consent of the parties." Fed.R.Civ.P. 15(b).[7] "Although no formal amendment was made, a district court may amend the pleadings merely by entering findings on the unpleaded issues." Galindo v. Stoody Co., 793 F.2d 1502, 1513 n. 8 (9th Cir.1986). Our review of trial court determinations under Rule 15(b) is for abuse of discretion. Quillen v. International Playtex, 789 F.2d 1041, 1043 (4th Cir.1986).
 
 
 10
 In our view, the district court abused its discretion in the present case by deeming the complaint amended to encompass an issue that was not tried with the consent of the parties. See id. at 1044; cf. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 814-15, 108 S.Ct. 2166, 2176-77, 100 L.Ed.2d 811 (1988). Nothing in the conduct of Elmore's counsel indicated an intention to amend the complaint or to pursue the cause of action ultimately relied on by the court. After requesting permission to amend during the pretrial motion proceedings, Elmore failed to take any amendatory action. Indeed, Elmore's counsel advised the court that he could find no authority on which such an amendment could be premised. Elmore never raised the theory of a property right to continued water services in the pleadings, during the motion proceedings, nor at trial.
 
 
 11
 On appeal, Elmore contends that the issue was tried by consent of the defendants. We cannot agree. During the opening statement of Corcoran and Clemons' counsel--directed entirely to Elmore's only pursued theory of false arrest and imprisonment--the trial court interjected, "But she had a property right, did she not, in her right to water? Haven't there been some cases that you can't just arbitrarily cut off electricity or water or something like that; are you familiar with those cases?" Counsel replied that she was not familiar with those decisions, a response difficult to interpret as consent to try the case on that issue.
 
 
 12
 Nor can the defendants' consent be implied solely from the introduction at trial of evidence relevant to Elmore's false arrest claim which also bore on the due process theory. "As we have held before, a court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim." Quillen, 789 F.2d at 1044, cited with approval in Christianson, 486 U.S. at 815, 108 S.Ct. at 2177; McLeod v. Stevens, 617 F.2d 1038, 1040-41 (4th Cir.1980); accord Lynch v. Dukakis, 719 F.2d 504, 508 (1st Cir.1983) ("an amendment after judgment is not permissible if it ... changes the theory on which the case was actually tried").[8]
 
 III
 
 13
 In sum, the district court in our view abused its discretion in deciding this case based on an issue that was not pleaded, briefed, argued, or factually substantiated in a purposeful way by the litigants, nor impliedly admitted into the pleadings by consenting defendants. See Evans Prods. Co. v. West Am. Ins. Co., 736 F.2d 920, 924 (3d Cir.1984). The judgment of the district court is therefore reversed and entry of judgment for the defendants is directed.[9]
 
 
 14
 REVERSED.
 
 
 
 [1]
 Judgment was entered against Corcoran and Clemons in their individual capacities. Elmore's complaint had named Corcoran and Clemons in their official capacities and the Town of Narrows, but the court entered judgment for the Town and its officials qua officials. The appellants were employed by the Town at all times relevant to this litigation
 
 
 [2]
 The district court ruled from the bench that Corcoran was liable for $7,500 in punitive damages, but its written judgment imposed only $7,000 in punitive damages
 
 
 [3]
 Elmore's water service was reconnected after her brother-in-law paid her full water bill and a reinstatement fee
 
 
 [4]
 The complaint stated, in relevant part:
 
 
 [10]
 During this set of events, the chief of police for the Town of Narrows, at the direction of and accompanied by the Town Manager at that time, Brad Corcoran, made said illegal arrest which resulted in the plaintiff being arrested under the aforesaid warrants
 
 
 [10]
 [sic] The undersigned plaintiff states that such arrests were made without any probable cause and constituted either false arrest or false imprisonment or both and she would show that after she was arrested, she was taken to Pearisburg, Virginia, and bonded on her own recognizance for this charge and as indicated above, she states that the said arrest and incarceration were without any justification or excuse and that as a result of these acts, she has suffered great mental pain and stress and in the future will have great mental pain and stress and has been humiliated
 
 
 [5]
 The case to which the court referred was Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (holding that customers of a municipal utility had a property interest in continued service based on Tennessee law). Elmore made a limited effort to pursue the theory suggested by the district court, as the court explained a year later in denying the defendants' motion to alter judgment or for a new trial:
 After the argument [on motion to dismiss], counsel for plaintiff telephoned a law clerk to the court and inquired about cases dealing with due process rights to utility service, the issue which the court had raised at the argument. Counsel stated that he had consulted the United States Code Annotated under 42 U.S.C. Sec. 1983 but had not found authority along the lines indicated by the court. The law clerk stated that he was unaware of a particular case the court might have had in mind but suggested that counsel consult an administrative law treatise.
 
 
 [6]
 Although Elmore's April bill (the bill on which the disputed $7.54 first appeared) stated that "Water, Sewer, and Garbage bills must be paid within 30 days of billing date or service will be discontinued," the trial court concluded that Elmore had until June 30 to tender payment because the same notice appeared on her next bimonthly bill, which listed the $7.54 with the initials "AR," meaning arrearage
 
 
 [7]
 Rule 15(b) provides in pertinent part:
 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.
 
 
 [8]
 The trial court's vague pretrial reminiscence that a due process theory relating to a property right in water service might be available to Elmore was not sufficient to place Corcoran and Clemons on notice that the outcome of their case would turn on this theory. The record demonstrates that the defendants were neither prepared to present evidence on the due process question nor to argue whether Memphis Light, 436 U.S. 1, 98 S.Ct. 1554, applies to the facts of this case--an issue that is open to legal dispute
 Memphis Light turned on the Supreme Court's conclusion that, under Tennessee state law, utility customers possessed a property right in utility service. Here, the trial court could find no Virginia case or statute discussing a comparable property right, and therefore based its finding on the prediction that the Virginia Supreme Court of Appeals would follow other jurisdictions if the issue were presented to it. See Note, The Duty of a Public Utility to Render Adequate Service: Its Scope and Enforcement, 62 Col.L.Rev. 312, 326 (1962); Annotation, Right to cut off water because of nonpayment of water bill or charges for connections, etc., 28 A.L.R. 472, 475-82 (1924).
 
 
 [9]
 We disagree with Corcoran and Clemons' contention that the district court failed to perform its duties impartially. In light of our holding, we need not reach their other assertions of error