ROBERT BLINN, APPELLANT, V. BEATRICE COMMUNITY
HOSPITAL AND HEALTH CENTER, INC., APPELLEE.

708 N.W.2d 235

Filed January 6, 2006.    No. S-04-079.

Nancy R. Wynner and Danielle M. Koonce and Erin R. Harris, Senior Certified Law Students, of DeMars, Gordon, Olson & Zalewski, for appellant.

Nicole B. Theophilus, Michaelle L. Baumert, and Angela M. Lisec, of Blackwell, Sanders, Peper & Martin, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

## I. NATURE OF CASE

The plaintiff in this case, Robert Blinn, was fired by his employer, Beatrice Community Hospital and Health Center, Inc. (Beatrice). Blinn sued Beatrice for breach of contract and promissory estoppel. The district court entered summary judgment against Blinn, but the Nebraska Court of Appeals reversed the judgment, based in part on its determination that although certain evidence was not directly relevant to Blinn's breach of contract claim as pleaded, it nonetheless gave rise to a genuine issue of material fact because Blinn's complaint had been constructively amended by implied consent pursuant to Neb. Ct. R. of Pldg. in Civ. Actions 15(b) (rev. 2003). Beatrice petitioned for further review, which we granted. For the reasons that follow, we find insufficient evidence in the record to support the Court of Appeals' finding that an issue not raised by the pleadings was tried by implied consent of the parties.

## II. BACKGROUND

### 1. FACTS

The following facts are taken from Blinn's deposition testimony, received into evidence at the hearing on Beatrice's motion for summary judgment. As pertinent, Blinn testified that in June 2002, he had received a job offer from a Kansas hospital. The

Kansas job would have been at a larger hospital and would have offered more responsibility and income potential than Blinn's job of executive director, medical staff development, at Beatrice. It was Blinn's understanding that the Kansas offer was for a position that Blinn could keep until he retired. Blinn was 67 years old at the time he received the offer. Blinn then went to the Beatrice administrator, Larry Emerson, seeking assurances about the permanency of Blinn's position with Beatrice, and drafted a resignation letter he intended to submit to Beatrice unless he received full assurances that Beatrice wanted him to stay. Blinn said:

> Well, I went in and asked him if I could visit, and I shut the door in his office and handed him this letter, and he read it, and he told me that he did not want me to leave. He assured me that I was doing a good job, and most importantly, he said, "Bob, we've got at least five more years of work to do." And I left his office feeling fully assured and fully confident that he had no negatives, 'cause I gave him total opportunity here to tell me.
>
> I left his office feeling he wanted me there, that he wanted me to stay there and that I should stay there and that we had plenty of work to do and that I could get the job done.

Blinn also asked for Emerson's permission to talk to the chairman of Beatrice's board of directors to seek similar assurances. Blinn testified that the chairman of the board said:

> "We want you to stay," and I said, "Well, it's really important to me, because whether I stay here or whether I go to [the Kansas hospital], I want it to be the last job I ever have," and [the chairman] assured me he wanted me to stay there and I could stay there until I retired.

However, Blinn was asked to resign by Beatrice in January 2003, and his employment with Beatrice was terminated in February.

## 2. Procedural History

Blinn sued Beatrice, alleging several theories of recovery based upon the termination of his employment. Blinn had been hired by Beatrice as an at-will employee, but alleged that his at-will employment status had been modified by oral agreement

to a term of employment of "at least five more years," which was not completed before Blinn's termination. The substance of Blinn's petition in the district court was that his at-will employment status had been modified by representations of Beatrice promising Blinn would be employed for a period of at least 5 years, that the representations induced Blinn to forgo another employment opportunity, and that Beatrice then terminated Blinn's employment approximately 6 months after the alleged representations. As pertinent, Blinn alleged theories of recovery based upon breach of an oral contract and promissory estoppel. Beatrice denied the allegations and additionally alleged Blinn's claims were barred by the statute of frauds. See Neb. Rev. Stat. § 36-202 (Reissue 2004) (oral agreement that, by its terms, is not to be performed within 1 year from its making, is void).

Beatrice filed a motion for summary judgment. The district court determined the alleged oral modification of Blinn's contract was not definite or specific enough to modify his at-will employment status, and entered summary judgment for Beatrice. The district court did not decide the statute of frauds issue.

The Court of Appeals reversed the district court's summary judgment. *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 13 Neb. App. 459, 696 N.W.2d 149 (2005). The Court of Appeals first recognized that Blinn's pleading did not allege Beatrice made representations that would modify his at-will employment status to anything other than employment for " 'at least five more years.' " *Id.* at 461, 696 N.W.2d at 152. However, the Court of Appeals concluded that Blinn's pleading had been amended by implied consent, pursuant to rule 15(b), which provides, in relevant part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

The Court of Appeals concluded that because there was evidence that Beatrice had assured Blinn he could work there " 'until [he]

retired,'" the alternate theory of employment until retirement could be considered to have been tried by implied consent. *Blinn*, 13 Neb. App. at 466, 696 N.W.2d at 155. The Court of Appeals further reasoned that the evidence created a genuine issue of material fact about whether Beatrice offered to extend Blinn's employment until he chose to retire. *Id.*

Based on that reasoning, the Court of Appeals also concluded that the statute of frauds did not apply, because Blinn could have chosen to retire within 1 year, and that therefore, the amended contract would have been capable of performance within 1 year. *Id.* Finally, the Court of Appeals concluded that the evidence created a genuine issue of material fact on Blinn's theory of recovery for promissory estoppel. *Id.* The Court of Appeals reversed the order granting summary judgment and remanded the cause for further proceedings. *Id.* We granted Beatrice's petition for further review.

## III. ASSIGNMENTS OF ERROR

Beatrice assigns that the Court of Appeals erred in (1) reaching issues not specifically assigned and argued as error by Blinn; (2) concluding, sua sponte, that the pleadings had been amended by implied consent pursuant to rule 15(b); and (3) concluding that the "amended" pleadings and evidence created a genuine issue of material fact as to Blinn's claims for breach of an oral contract and promissory estoppel.

## IV. STANDARD OF REVIEW

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *New Tek Mfg. v. Beehner, ante* p. 264, 702 N.W.2d 336 (2005).

## V. ANALYSIS

### 1. RULE 15(b)

#### (a) Use of Rule 15(b) in Appellate Court

Initially, Beatrice argues that the rule 15(b) issue should not have been considered by the Court of Appeals because it was neither assigned as error nor argued in Blinn's appellate brief.

We find this argument to be without merit. The district court's decision on Beatrice's motion for summary judgment was not based on any finding regarding the scope of Blinn's pleadings. Instead, the district court determined that there was no genuine issue of material fact presented by the evidence, and Blinn's appellate brief took issue with that determination. Blinn could not properly have been held to have waived any issue with respect to the scope of the pleadings by not raising that issue in his appellate brief.

■ In a related argument, Beatrice contends that rule 15(b) requires a party to actually make a motion for amendment and that such amendment cannot occur at the appellate level. Both of these arguments are without merit. We preface this analysis by observing that rule 15(b) is substantially identical to Fed. R. Civ. P. 15(b), and thus, we look to federal decisions interpreting the corresponding federal rule for guidance in interpreting the similar Nebraska rule. See *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005).

■ First, no express motion to amend is necessary, by the plain language of the rule. Rule 15(b) states that amendment of the pleadings "*may* be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues*." (Emphasis supplied.) "This is so even if there is no motion to amend the pleadings; indeed, that's the point of Rule 15(b)." *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992). Even when a party does not move for leave to amend pleadings, a court may constructively amend pleadings on unpleaded issues in order to render a decision consistent with the trial. 3 James Wm. Moore et al., Moore's Federal Practice § 15.18[3] (3d ed. 2005). See, e.g., *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168 (1st Cir. 1995); *Walton v. Jennings Community Hosp., Inc.*, 875 F.2d 1317 (7th Cir. 1989).

■ Second, it is settled in the federal courts that constructive amendment at the appellate level is permissible. As a general rule, constructive amendment of pleadings on appeal is permitted when the effect will be to acknowledge that certain issues upon which the lower court's decision has been based or issues consistent with the trial court's judgment have been litigated. *City of Rome, N.Y. v. Verizon Communications, Inc.*, 362 F.3d

168 (2d Cir. 2004). See, e.g., *Brandon v. Holt*, 469 U.S. 464, 471, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985) (citing rule 15(b) in support of determination that formal amendment of pleadings was unnecessary "even at this late stage of the proceedings" and "proceed[ing] to decide the legal issues without first insisting that such a formal amendment be filed"); *Walton, supra*; *Smith v. CMTA-IAM Pension Trust*, 654 F.2d 650 (9th Cir. 1981). See 3 Moore et al., *supra*, § 15.18[1] at 15-74.

We find the federal understanding of rule 15(b) to be persuasive, and we adopt it in this case. It would be inconsistent with the intent of rule 15(b) for us to conclude that when parties agree to try an issue, an appellate court should nonetheless disregard the result of that trial. Beatrice's argument that the Court of Appeals erred in raising rule 15(b) on appeal, sua sponte, is without merit.

(b) Application of Rule 15(b) to Summary Judgment

Next, Beatrice argues that rule 15(b), which by its terms refers to issues "tried" by consent of the parties, does not apply to summary judgment motions, which are by definition not "trials." See Neb. Rev. Stat. § 25-1103 (Reissue 1995). This is a disputed question in federal courts. See *Independent Petroleum Ass'n of America v. Babbitt*, 235 F.3d 588 (D.C. Cir. 2001). Compare *Kulkarni v. Alexander*, 662 F.2d 758 (D.C. Cir. 1978) (general principle of rule 15(b) has been applied to motions for summary judgment), and *Bobrick Corporation v. American Dispenser Co.*, 377 F.2d 334 (9th Cir. 1967) (rule 15 covers motions and factual issues under motions), with *Harris v. Secretary, U.S. Dept. of Veterans Affairs*, 126 F.3d 339 (D.C. Cir. 1997) (rule 15(b) applies where matter has gone to trial, not to motion for summary judgment), and *Crawford v. Gould*, 56 F.3d 1162 (9th Cir. 1995) (rule 15(b) allows court to revise pleadings to conform to case as actually litigated at trial, not summary judgment).

We do not decide this issue in the instant appeal because, as will be explained below, we find the record in this case insufficient to support a finding that an issue not raised by the pleadings was tried by implied consent. Since rule 15(b) is not applicable in any event, for purposes of deciding this appeal, we assume without deciding that rule 15(b) can be properly applied to a summary judgment.

(c) Evidence of Implied Consent

■ Beatrice argues that it never consented, impliedly or otherwise, to trial of the issue raised by the Court of Appeals. The key inquiry of rule 15(b) for "express or implied consent" is whether the parties recognized that an issue not presented by the pleadings entered the case at trial. *Missouri Housing Development Com'n v. Brice*, 919 F.2d 1306 (8th Cir. 1990). See 3 James Wm. Moore et al., Moore's Federal Practice § 15.18[1] at 15-76 (3d ed. 2005).

> In determining whether to allow amendments to conform to the evidence, a court initially should consider whether the opposing party expressly or impliedly consented to the introduction of the evidence. Express consent may be found when a party has stipulated to an issue or the issue is set forth in a pretrial order.

> Implied consent may arise in two situations. First, the claim may be introduced outside of the complaint — in another pleading or document — and then treated by the opposing party as if pleaded. Second, consent may be implied if during the trial the party acquiesces or fails to object to the introduction of evidence that relates only to that issue.

> *Implied consent may not be found if the opposing party did not recognize that new matters were at issue during the trial. The pleader must demonstrate that the opposing party understood that the evidence in question was introduced to prove new issues.*

(Emphasis supplied.) *Id.*, § 15.18[1] at 15-75 to 15-76.

Here, the Court of Appeals found that the issue of Beatrice's offer of employment until retirement was tried by implied consent, because evidence was presented on the issue and Beatrice did not object to such evidence. *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 13 Neb. App. 459, 696 N.W.2d 149 (2005). This is the situation in which courts most often find that parties implicitly consented to the trial of an issue. See 3 James Wm. Moore et al., *supra*, § 15.18[1]. But an opposing party's recognition of a new issue

> would not be shown, for example, if the new issue was merely raised inferentially by evidence that was relevant to

> the issues that were pleaded, and that the opposing party directly addressed only the pleaded issues at trial. A court may not find consent when evidence supporting an issue allegedly tried by implied consent is also relevant to other issues actually pleaded and tried.

*Id.*, § 15.18[1] at 15-76 to 15-77.

If the evidence overlaps in this fashion, it does not equate to implied consent absent a clear indication that the party who introduced the evidence was attempting to raise a new issue. *Portis v. First Nat. Bank of New Albany, MS*, 34 F.3d 325 (5th Cir. 1994). A court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim. *Elmore v. Corcoran*, 913 F.2d 170 (4th Cir. 1990).

> In general, a finding of implied consent "depends on whether the parties recognized that an issue not presented by the pleadings entered the case at trial." . . . "Where a party does not recognize the significance of evidence and so fails to contest it, he cannot realistically be said to have given his implied consent to the trial of unpled issues suggested by it, always assuming that his failure to grasp its significance was reasonable." . . . When evidence is introduced that is relevant to a pleaded issue and the party against whom the amendment is urged has no reason to believe a new issue is being injected into the case, that party cannot be said to have impliedly consented to trial of that issue.

(Citations omitted.) *Domar Ocean Transp. v. Independent Refining Co.*, 783 F.2d 1185, 1188 (5th Cir. 1986). Accord, e.g., *Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005 (9th Cir. 2004); *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168 (1st Cir. 1995); *Burdett v. Miller*, 957 F.2d 1375 (7th Cir. 1992). See, e.g., *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988).

In this case, Beatrice argues, persuasively, that the evidence relied upon by the Court of Appeals was not objected to because it was pertinent to the issues that were properly pleaded in the case, such as Blinn's alleged reliance on Beatrice's representations and Blinn's performance at the hospital. In particular,

Blinn's testimony that the chairman of the board said Blinn "could stay [at Beatrice] until [he] retired" was relevant to Blinn's promissory estoppel claim, and such testimony cannot be said to have notified Beatrice that Blinn's claim of breach of an oral contract had been expanded to include a claim that Blinn's employment-at-will relationship with Beatrice had been modified to a contract of employment until retirement.

To satisfy rule 15(b), evidence to which no objection is raised must be directed solely at the unpleaded issue, in order to provide a clear indication that the opposing party would or should have recognized that a new issue was being injected into the case. The record here simply fails to satisfy that standard. The Court of Appeals erred in concluding that the pleadings in this case had been constructively amended by implied consent pursuant to rule 15(b).

### 2. Genuine Issues of Material Fact

Beatrice argues that the Court of Appeals erred in determining that the record presented genuine issues of material fact with respect to Blinn's breach of contract and promissory estoppel claims. We agree with Beatrice with respect to the breach of contract, but conclude that when the evidence is taken in the light most favorable to Blinn, there is a genuine issue of material fact with respect to Blinn's promissory estoppel claim.

### (a) Breach of Contract

We turn first to Blinn's breach of contract claim, which rests on Blinn's contention that the representations made to him by his superiors were sufficient to modify his status as an at-will employee. When employment is not for a definite term and there are no contractual, statutory, or constitutional restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause it chooses. *Goff-Hamel v. Obstetricians & Gyns., P.C.*, 256 Neb. 19, 588 N.W.2d 798 (1999). Oral representations may, standing alone, constitute a promise sufficient to create contractual terms which can modify the at-will status of an employee. *Walpus v. Milwaukee Elec. Tool Corp.*, 248 Neb. 145, 532 N.W.2d 316 (1995). However, the burden of proving the existence of an employment contract and all the facts essential to the cause of

action is upon the person who asserts the contract. *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993).

The question is whether the assurances allegedly given to Blinn were sufficiently definite in form to constitute an offer of a unilateral contract. The language which forms the basis of an alleged employment contract, whether oral or written, must constitute an offer definite in form which is communicated to the employee, and the offer must be accepted and consideration furnished for its enforceability. See *Walpus, supra.* Under those circumstances, the employee's retention of employment constitutes acceptance of the offer of a unilateral contract because by continuing to stay on the job although free to leave, the employee supplies the necessary consideration for the job. See *Overmier v. Parks*, 242 Neb. 458, 495 N.W.2d 620 (1993). Accord *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 517 N.W.2d 382 (1994).

The question under such circumstances is whether the employer manifests a clear intent to make a promise as an offer of employment other than employment at will, and to be bound by it, so as to justify an employee in understanding that a commitment has been made. See, *Prescott v. Farmers Telephone Co-op.*, 335 S.C. 330, 516 S.E.2d 923 (1999); *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997 (Utah 1991); *Cederstrand v. Lutheran Brotherhood*, 263 Minn. 520, 117 N.W.2d 213 (1962). Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions. *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725 (Ala. 1987); *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983). There must be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Overmier, supra.*

Here, even viewed in the light most favorable to Blinn, the assurances offered to him were not sufficiently definite in form to constitute an offer of a unilateral contract. The statement that "we've got at least five more years of work to do" is not a clear offer of definite employment and does not manifest an intent to create a unilateral contract. See *Foreman v. AS Mid-America*, 255 Neb. 323, 343, 586 N.W.2d 290, 304 (1998) (rule of

employee conduct "contain[ed] no clear offer of definite employment" where there was "no evidence in the record that either party understood the rules of conduct as creating an implied contract"). See, also, *Walpus, supra*; *Hamersky, supra*; *Overmier, supra*; *Mau v. Omaha Nat. Bank*, 207 Neb. 308, 299 N.W.2d 147 (1980), *disapproved on other grounds, Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 408 N.W.2d 261 (1987).

> "[U]nless the [plaintiff's] theory has some relation to the reality, calling something a contract that is in no sense a contract cannot advance respect for the law. . . . [W]e seek a resolution which is consistent with contract law relative to the employment setting while minimizing the possibility of abuse by either party to the employment relationship."

*Walpus v. Milwaukee Elec. Tool Corp.*, 248 Neb. 145, 155-56, 532 N.W.2d 316, 323 (1995), quoting *Rowe v Montgomery Ward*, 437 Mich. 627, 473 N.W.2d 268 (1991). An employee's subjective understanding of job security is insufficient to establish an implied contract of employment to that effect, see *Hamersky, supra*, and the record here does not establish sufficient evidence to conclude that any employee of Beatrice intended to offer a contract of employment on terms other than employment at will.

For that reason, the Court of Appeals erred in concluding that there was a genuine issue of material fact with respect to Blinn's breach of contract claim.

### (b) Promissory Estoppel

Recovery on a theory of promissory estoppel is based upon the principle that injustice can be avoided only by enforcement of a promise. *Folgers Architects v. Kerns*, 262 Neb. 530, 633 N.W.2d 114 (2001). Under the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise. *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994).

Under Nebraska law, the doctrine of promissory estoppel does not require that the promise giving rise to the cause of action must meet the requirements of an offer that would ripen into a contract if accepted by the promisee. See, *id.*; *Hawkins Constr. Co. v. Reiman Corp.*, 245 Neb. 131,

511 N.W.2d 113 (1994); *Whorley v. First Westside Bank*, 240 Neb. 975, 485 N.W.2d 578 (1992). Simply stated, there is no requirement of "definiteness" in an action based upon promissory estoppel. *Hawkins Constr. Co., supra*; *Whorley, supra*; *Rosnick v. Dinsmore*, 235 Neb. 738, 457 N.W.2d 793 (1990). Instead of requiring reasonable definiteness, promissory estoppel requires only that reliance be reasonable and foreseeable. See *id.*

Here, we agree with the determination made by the Court of Appeals that there is a genuine issue of material fact with respect to Blinn's promissory estoppel claim. While the statements allegedly made by Blinn's superiors were insufficiently definite to offer a contract of employment on terms other than employment at will, there is a genuine issue of material fact as to whether Blinn was promised terms of employment that could reasonably have been expected to induce Blinn to forgo the job opportunity in Kansas of which he had informed Beatrice. Under the circumstances, when considering the lesser requirement that Nebraska law imposes on a promise that forms the basis of a promissory estoppel cause of action, we conclude that the district court erred in not finding a genuine issue of material fact.

The dissent contends that we have extended our decision in *Goff-Hamel v. Obstetricians & Gyns., P.C.*, 256 Neb. 19, 588 N.W.2d 798 (1999), by concluding that there is a genuine issue of material fact with respect to Blinn's promissory estoppel claim. But our decision not to rely on *Goff-Hamel* was not inadvertent; while *Goff-Hamel* remains the law, its holding is simply not applicable to this case.

In *Goff-Hamel*, as the dissent observes, we held that a cause of action for promissory estoppel can be alleged in connection with detrimental reliance on a promise of at-will employment. The dissent asserts that our decision in the instant case extends that rule. But the distinguishing feature is that here, Blinn is not claiming to have relied upon a promise of at-will employment. Rather, Blinn alleges that he was employed at will, and relied on a promise of more than that.

In *Goff-Hamel*, an employee had resigned her employment in order to accept another offer of at-will employment, but before she began her new job, she was told not to report to work. We

concluded that the unfulfilled promise of at-will employment was sufficient to support an action for promissory estoppel. In the instant case, by contrast, Blinn was already employed by Beatrice at will and alleged that he declined another opportunity because he was promised that he would be employed for at least 5 more years or, in the alternative, until he retired. In other words, Blinn alleged that he was promised a fixed term of employment, instead of at-will employment. The question in this case is not whether reliance upon a promise of at-will employment is actionable. Rather, the question here is whether the evidence is sufficient to create a genuine issue of material fact as to whether Beatrice is estopped from claiming that Blinn's employment was at will by Blinn's reliance on the promises Beatrice made. Aside from reiterating some basic propositions of promissory estoppel, *Goff-Hamel* simply does not help answer this question, by application or extension.

The dissent seems to conclude that because we did not find Beatrice's assurances of continued employment to be sufficiently definite to constitute an offer of a unilateral contract, "they can be regarded as nothing more than a promise of continued at-will employment." This conclusion is inconsistent with the requirements of promissory estoppel in Nebraska, because we have rejected the Restatement view of promissory estoppel for a less demanding standard.

Under the Restatement view, a "promise" for purposes of promissory estoppel must meet the same requirements as a "promise" for purposes of contract formation. Compare Restatement (Second) of Contracts §§ 2 and 90 (1981). Generally speaking, under the Restatement, when a promise is made, but a contract is not formed because of a lack of consideration, reasonable reliance by the promisee can still render the promisor liable for breach of the promise. See *Farmland Service Coop, Inc. v. Klein*, 196 Neb. 538, 244 N.W.2d 86 (1976). In short, analysis of the promise is the same as that for a contract, except that the promisee's reliance on the promise replaces the missing consideration. See, generally, Restatement, *supra*, § 90, comment *a*.

But in Nebraska, we have rejected that view. As noted earlier, we have held that there is no requirement of "definiteness" in an

action based upon promissory estoppel. *Rosnick v. Dinsmore*, 235 Neb. 738, 457 N.W.2d 793 (1990). In *Rosnick*, we departed from the Restatement view that a promise for estoppel purposes requires the same definiteness as a promise for contract purposes. In *Whorley v. First Westside Bank*, 240 Neb. 975, 485 N.W.2d 578 (1992), we expressly considered the Restatement view, cited conflicting authority, and reaffirmed our holding in *Rosnick.* Contrary to the Restatement view, the law in Nebraska is that a promissory estoppel action may be based on an alleged promise that is insufficiently definite to form a contract, but upon which the promisee's reliance is reasonable and foreseeable. *Whorley, supra.* The difference between contract and promissory estoppel, then, is that a contract requires that the promisor intend to make a binding promise—a binding mutual understanding or "meeting of the minds"—while promissory estoppel requires only that the promisee's reliance on the promise be reasonable and foreseeable, even if the promisor did not intend to be bound. A promisor need not intend a promise to be binding in order to foresee that a promisee may reasonably rely on it.

Contrary to that jurisprudence, the dissent mistakenly concludes that since Beatrice did not make a sufficiently definite promise for an offer of a unilateral contract, the promise must have been for, at best, continued at-will employment. Because promissory estoppel does not require definiteness, an employer need not intend to contractually modify an employee's at-will employment in order for an employee to reasonably and foreseeably believe that his or her terms of employment have been changed and, therefore, act in reliance on that belief. Here, there is insufficient evidence to conclude that Beatrice intended to offer Blinn a unilateral contract. But there is sufficient evidence, if believed by the trier of fact, to conclude that Blinn reasonably and foreseeably relied on Beatrice's assurances of a fixed term of employment, and Beatrice breached that promise. There is a genuine issue of material fact to be decided, and the Court of Appeals correctly reversed the district court's judgment on this issue.

### (c) Statute of Frauds

The Court of Appeals determined, premised upon its rule 15(b) analysis, that there was a genuine issue of fact with respect to

Beatrice's statute of frauds defense. However, the district court made no determination on this issue, and Beatrice conceded, in its appellate brief, that in light of the district court's conclusion that no oral contract existed, the statute of frauds issue was moot. Beatrice has not suggested that the statute of frauds defense applies to a promissory estoppel cause of action where there is no otherwise valid contract. Compare, *Rosnick, supra*; *Farmland Service Coop, Inc. v. Klein*, 196 Neb. 538, 244 N.W.2d 86 (1976) (where otherwise binding contract is barred by statute of frauds, promissory estoppel will not lie to circumvent statute of frauds).

Because the Court of Appeals' statute of frauds determination was premised on its faulty rule 15(b) analysis, it must also be reversed. In light of our determination that the district court correctly entered summary judgment on Blinn's breach of contract claim, and Beatrice's concession in its appellate brief that the statute of frauds issue is therefore moot, we decline to address the matter further.

## VI. CONCLUSION

We conclude that the district court correctly entered summary judgment on Blinn's breach of oral contract claim, but erred in finding no genuine issue of material fact with respect to Blinn's promissory estoppel claim. The Court of Appeals erred in its application of rule 15(b), as the evidence is insufficient to show implied consent to the trial of an issue not raised by the pleadings. The Court of Appeals further erred in reversing the district court's judgment on the breach of contract claim, but correctly reversed the court's judgment on the promissory estoppel claim. The judgment of the Court of Appeals is affirmed in part and in part reversed, and this cause is remanded to the Court of Appeals with directions to affirm the district court's judgment in part, and in part reverse the court's judgment, in a manner consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

MILLER-LERMAN, J., participating on briefs.

STEPHAN, J., dissenting.

I agree with the majority that the Court of Appeals erred in concluding that the pleadings were constructively amended by

implied consent pursuant to Neb. Ct. R. of Pldg. in Civ. Actions 15(b) (rev. 2003). I also agree that there is no genuine issue of material fact with respect to Blinn's breach of contract claim. However, I respectfully dissent from the judgment reached by the majority because it has extended what I believe to be an incorrect rule that promissory estoppel may form the basis for claims involving at-will employment. See *Goff-Hamel v. Obstetricians & Gyns., P.C.*, 256 Neb. 19, 588 N.W.2d 798 (1999) (Stephan, J., dissenting).

Until today, the clear rule in Nebraska has been that unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason. *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 657 N.W.2d 634 (2003); *Malone v. American Bus. Info.*, 262 Neb. 733, 634 N.W.2d 788 (2001). This rule is subject to an exception that an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy. *Id.* Oral representations may constitute a promise sufficient to create contractual terms which could modify the at-will status of the employee. *Walpus v. Milwaukee Elec. Tool Corp.*, 248 Neb. 145, 532 N.W.2d 316 (1995); *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 517 N.W.2d 382 (1994). However, such oral representations must be sufficiently definite to meet the prerequisites of a contract in order to modify an employee's at-will status. As noted in the majority opinion, the employee's subjective understanding of job security is insufficient to establish an implied contract of employment to that effect. See, *Hamersky, supra*; *Hillie v. Mutual of Omaha Ins. Co.*, 245 Neb. 219, 512 N.W.2d 358 (1994). In *Hamersky*, we held that oral assurances of employment in a specific position until retirement were insufficient as a matter of law to contractually modify the at-will status of an employee.

In this case, it is undisputed that Blinn was an at-will employee. There is no claim that he was terminated in violation of any constitution, statute, or public policy. The majority thus correctly determines that the record "does not establish sufficient evidence to conclude that any employee of Beatrice intended to offer a contract of employment on terms other than

employment at will." In my view, this should end the analysis because the evidence does not fall within any of the previously recognized exceptions to our "clear rule" regarding the employer's right to discharge an at-will employee "at any time with or without reason." *Jackson*, 265 Neb. at 425-26, 657 N.W.2d at 636.

However, the majority goes on to conclude that under the doctrine of promissory estoppel, an at-will employment relationship may be transformed into employment for a specific duration by the employee's reliance upon oral statements made by the employer which are too indefinite to constitute a contractual meeting of the minds. This is new law in Nebraska. I agree with the majority that *Goff-Hamel v. Obstetricians & Gyns., P.C.*, 256 Neb. 19, 588 N.W.2d 798 (1999), does not directly compel this holding if it is limited to its facts, which involved the withdrawal of an offer of at-will employment before the employment relationship began. But I respectfully submit that if the majority has not extended the holding of *Goff-Hamel* by design, it has done so by necessary implication, because there is no other precedent for the application of principles of promissory estoppel to the facts presented in this case.

Of the cases cited by the majority in its analysis of the promissory estoppel issue, only *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994), involved an at-will employment relationship. In that case, a deputy sheriff was discharged after working for approximately 4 months. She asserted a wrongful discharge claim on an alternative theory of promissory estoppel, alleging that she left her previous employment in reliance upon the offer of employment in the sheriff's office. Noting that the plaintiff was an at-will employee and that she worked for a short time prior to her discharge, the court concluded that "the situation which we find is that the promise was one to offer at-will employment, which promise was kept, and estoppel is not available." *Id.* at 665, 522 N.W.2d at 408. *Merrick* was distinguished but not overruled in *Goff-Hamel*. In my view, *Merrick* should control the resolution of this case. Because the alleged oral statements are insufficient as a matter of law to modify Blinn's at-will status, they can be regarded as nothing more than a promise of continued at-will employment.

*Goff-Hamel* is the only case in which this court has recognized promissory estoppel as the legal basis for a claim alleging wrongful withdrawal of an offer of at-will employment. The instant case is the first in which this court has recognized promissory estoppel as the basis for a claim of wrongful termination of at-will employment. As a result of today's decision by the majority, our "clear rule" regarding termination of at-will employment has become quite murky. Now, as I understand the majority opinion, (1) an employer may lawfully discharge an at-will employee whenever and for whatever reason it chooses, so long as that reason does not contravene a constitution, statute, contract, or public policy; (2) one is an at-will employee unless there is a contract for employment for a specific duration; and (3) general oral assurances of continued employment which create a subjective understanding of job security are insufficient as a matter of law to create such a contract; but (4) a legally enforceable entitlement to employment for a specific duration can be implied on the basis of the employee's subjective understanding of and detrimental reliance upon oral assurances which are too indefinite to constitute a contractual modification of the employee's at-will status.

In my dissent in *Goff-Hamel*, I expressed the view that where parties to an employment relationship have not chosen to impose contractual obligations upon themselves, a court should not utilize the principle of promissory estoppel to impose the subjective expectations of either party upon the other. My view has not changed. I would reverse the judgment of the Court of Appeals and affirm the judgment of the district court.

CONNOLLY, J., joins in this dissent.