IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL

STANDING STONE V. KIRKHAM MICHAEL & ASSOCS.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STANDING STONE, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, AND STEVE FALLER, APPELLANTS, V. KIRKHAM MICHAEL & ASSOCIATES, INC., A NEBRASKA CORPORATION, APPELLEE.

Filed September 23, 2014.    No. A-13-547.

Appeal from the District Court for Douglas County: W. MARK ASHFORD, Judge. Affirmed.

Christopher D. Curzon, of Smith, Gardner, Slusky, Lazer, Pohren & Rogers, L.L.P., for appellants.

Michael J. Matukewicz and Andrew M. Hollingsead, of Liakos & Matukewicz, L.L.P., for appellee.

MOORE, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Standing Stone, LLC, a Nebraska limited liability company, and Steve Faller, the sole owner of Standing Stone, appeal from an order of the district court for Douglas County which found in favor of Kirkham Michael & Associates, Inc. (Kirkham Michael), a Nebraska corporation, on all of Standing Stone's causes of action against Kirkham Michael, including breach of contract, professional negligence, and promissory estoppel. Based on the reasons that follow, we affirm.

### BACKGROUND

In the fall of 2003, Faller wanted to develop a new residential and commercial subdivision in Gretna, Nebraska, called Standing Stone. He contacted Kirkham Michael, an

engineering firm, about conducting preliminary survey work for a piece of property consisting of 168 acres of undeveloped land in Gretna. Kirkham Michael agreed to do the preliminary survey work for $5,000.

In the meantime, Faller formed Standing Stone for the purpose of developing the subject property into the Standing Stone subdivision. The property was purchased by Standing Stone in April 2004 for $4,399,500. In June 2004, Standing Stone filed a petition for declaration for Sanitary Improvement District (SID) 251 in the Sarpy County District Court and the court subsequently entered a decree forming SID 251 on June 16. An SID is a governmental municipality with taxing authority created by state statute which provides a financing mechanism for a developer. SID 251 secured bonds for purposes of financing the subdivision infrastructure including utilities and roads.

After SID 251 was formed, it entered into a written contract (Engineering Contract) with Kirkham Michael on June 22, 2004, to have Kirkham Michael perform various engineering services pertaining to the development of the Standing Stone subdivision. The Engineering Contract was signed by Faller, in his capacity as chairman of SID 251, and by John Adler, Kirkham Michael's senior vice president. The contract specified in detail the nature and scope of the work to be undertaken.

On December 16, 2005, Standing Stone entered into a purchase agreement with Gretna Stone, LLC, for the sale of the development. The purchase agreement stated the projected special assessment costs for single family lots and commercial lots based on representations and analysis provided by Kirkham Michael. The contract provided that in the event the special assessment costs exceeded the estimates set forth in the contract, Standing Stone would pay half of the overage.

Subsequent to the sale of the development to Gretna Stone, the special assessments exceeded the amounts set forth in the purchase agreement, and consequently, Standing Stone became liable to Gretna Stone for the excessive special assessments.

On May 2, 2008, Standing Stone filed a complaint against Kirkham Michael alleging breach of contract, professional negligence, and detrimental reliance. The complaint alleged that in September 2003, Standing Stone engaged Kirkham Michael to provide engineering and consulting services in regard to the residential and commercial development of certain real estate which later formed into SID 251. The complaint further alleged that in conjunction with providing engineering and consulting services, Kirkham Michael was "specifically employed to determine costs for all infrastructure and improvements which were to be relied upon by Standing Stone, SID #251 and other professionals involved in the Development." The complaint alleged that Standing Stone became liable to Gretna Stone pursuant to the purchase agreement, for the excessive special assessments, causing a liability in the amount of $424,080. Standing Stone also alleged that Kirkham Michael intentionally eliminated the purchase of an outlot by SID 251 for $185,000, without consulting Standing Stone, in order to lower the general obligation portion of the infrastructure costs to less than 4 percent of the estimated taxable value of the development and thereby comply with the representations made to Kuehl Capital and Standing Stone. Standing Stone further alleged that it lost 1 acre of commercial land for a detention pond that had not been previously calculated or factored in by Kirkham Michael as necessary for the development, resulting in alleged damages of $185,130.

Under Standing Stone's breach of contract cause of action, it alleged that Standing Stone and Kirkham Michael entered into an agreement whereby "[Standing Stone] and SID #251 agreed to pay [Kirkham Michael] for engineering and consulting services, and [Kirkham Michael] agreed to provide expertise. [Kirkham Michael] breached the agreement by failing to properly perform under the terms of the contract." The complaint further alleged that as a result of Kirkham Michael's breach of the agreement, Standing Stone has been injured in an amount in excess of $800,000. Standing Stone sought the same amount of damages in its causes of action for professional negligence and detrimental reliance.

Kirkham Michael filed an answer denying that it entered into a contract with Standing Stone and denied that it owed any duties to Standing Stone. Kirkham Michael also set forth several affirmative defenses and set forth a counterclaim alleging that the claims against it were frivolous. Kirkham Michael filed an amended answer with the court's permission at the end of Standing Stone's evidence at trial and added the affirmative defenses of illegality, against public policy, and statute of frauds.

At trial, Standing Stone alleged that it had an oral contract with Kirkham Michael in which Kirkham Michael agreed to perform a "bundle of services" for Standing Stone and that in exchange for the services, Kirkham Michael would get to work for the SID and would be compensated through the SID. Based on these allegations, Standing Stone contended that Kirkham Michael breached the terms of the alleged oral contract on the theory that it was negligent in performing the engineering services, thereby causing damages to Standing Stone. In contrast, Kirkham Michael alleged that no contract existed between it and Standing Stone.

Faller testified that he first met with someone from Kirkham Michael in the latter part of 2003 and that they had several meetings during which they discussed the feasibility of the development. He testified that an agreement was reached in which Kirkham Michael would do the initial survey work on the project, which included site survey, site investigation, and preliminary infrastructure costs. In exchange for the survey work, Standing Stone would pay Kirkham Michael $5,000. Faller also testified that it was agreed that after the initial survey work, Kirkham Michael would provide a "bundle" of engineering services to Standing Stone throughout the project, and when SID 251 was formed, Kirkham Michael would be awarded the engineering work for the SID. He contends he and Kirkham Michael specifically discussed that Kirkham Michael would be paid $5,000 for the initial survey work and that payment thereafter would be the award of the work for the SID. He testified that he did not know the exact date the oral agreement was entered into, but stated it was close to November 1, 2003.

When asked how he knew he had an oral agreement with Kirkham Michael, Faller responded that Kirkham Michael began performing work on the project and continued working on the project and that he had regular meetings with Kirkham Michael. Faller stated that Kirkham Michael worked with him for 8 months before SID 251 was created. He also testified that Kirkham Michael did not stop representing Standing Stone when the SID was created and that Kirkham Michael continued working with Faller and Standing Stone throughout the project. Faller further testified that Kirkham Michael never indicated that it would not be working for Standing Stone throughout the entire process and never stated that it would not be working for Standing Stone after the SID was created. Faller presented several documents that were prepared by Kirkham Michael on behalf of Standing Stone after the SID was created, which documents he

claimed related back to the original agreement that Kirkham Michael would provide engineering services for Standing Stone.

On cross-examination, Faller admitted that neither Standing Stone's answers to interrogatories nor his deposition make any mention of Kirkham Michael's agreeing to do engineering work for Standing Stone in exchange for the SID contract. He testified that the complaint does not mention this arrangement either. He further testified on cross-examination that the $5,000 for the preliminary survey work was the only money Faller or Standing Stone paid to Kirkham Michael and that Kirkham Michael has not billed him or Standing Stone for any other amounts. He also admitted that neither he nor Standing Stone were parties to the Engineering Contract and that Kirkham Michael and SID 251 are both specifically identified as parties to the contract. He further acknowledged that when he signed the contract between Kirkham Michael and SID 251, he did not sign in his individual capacity or on behalf of Standing Stone.

Adler, Kirkham Michael's senior vice president, testified that no oral contract existed between Standing Stone and Kirkham Michael. He testified that there was no contract of any kind between Standing Stone and Kirkham Michael beyond the original $5,000 preliminary survey contract.

He testified that in the fall of 2003, Faller and Kirkham Michael had a few meetings about the Standing Stone development, and that they came to an agreement that Kirkham Michael would do the preliminary surveying and platting process. He testified that the platting process includes land surveying, lot layout, cost estimates, public improvements, and a grading plan. He stated that Faller agreed to $5,000 for these services and that there were no other agreements with Faller or Standing Stone. Adler testified that the work agreed upon was performed, a bill was prepared, and the bill was paid by Standing Stone. Adler stated that neither Faller nor Standing Stone were billed any other amounts for engineering services.

Following trial, the trial court found that the weight of the evidence did not establish that there was a meeting of the minds or a binding mutual understanding between the parties sufficient to create the alleged oral contract. The court concluded that Faller and Standing Stone failed to carry their burden of proof to show that a contract existed. The court further found that because the existence of the alleged oral contract was not sustained by the evidence, Faller and Standing Stone lacked privity of contract with Kirkham Michael. It stated that because there was no evidence of fraud or "other extraordinary facts" as required to extend Kirkham Michael's liability to a third party with whom Kirkham Michael does not have privity of contract, it is not liable in negligence to Faller and Standing Stone. The court further stated, "As a result, [Faller and Standing Stone] lack standing, thus further discussion of [Faller and Standing Stone's] other causes of action is unnecessary."

ASSIGNMENTS OF ERROR

Standing Stone assigns that the trial court erred in (1) finding that no contract existed between Standing Stone and Kirkham Michael, (2) failing to find that Kirkham Michael was professionally negligent, and (3) failing to make any findings on its claim for promissory estoppel.

STANDARD OF REVIEW

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *Enterprise Bank v. Knight*, 20 Neb. App. 662, 832 N.W.2d 25 (2013).

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.*

ANALYSIS

*Breach of Contract.*

Standing Stone first assigns that the trial court erred in finding that no contract existed between Standing Stone and Kirkham Michael. Standing Stone argues that it had an oral contract with Kirkham Michael and that the agreement consisted of Kirkham Michael's promising to provide Standing Stone with a "bundle" of engineering services and Standing Stone's promising to compensate Kirkham Michael by awarding it the SID work worth more than $1 million. Kirkham Michael refutes Standing Stone's claim, arguing that no oral contract existed between them.

The basic principles of law governing this case have long been established. To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Stitch Ranch v. Double B.J. Farms*, 21 Neb. App. 328, 837 N.W.2d 870 (2013). A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract. *Id.* A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances. *Id.*

It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements. *Id.* It must identify the subject matter and spell out the essential commitments and agreements with respect thereto. *Id.*

A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract. *MBH, Inc. v. John Otte Oil & Propane*, 15 Neb. App. 341, 727 N.W.2d 238 (2007).

In the present case, Standing Stone had the burden to establish that a valid, legally enforceable contract existed and that its terms and requirements were definite and certain. The trial court found that Standing Stone had failed to meet its burden.

Faller testified that Kirkham Michael worked with him for 8 months in regard to the development before the SID was created. He contends that Kirkham Michael did so in order to secure and maintain the SID work as per the alleged agreement. Faller also testified that Kirkham Michael continued working with him and Standing Stone throughout the project and that Kirkham Michael never indicated that it was not working with Standing Stone after the SID was created.

However, Faller could not articulate what the details of the alleged oral contract were. His description of the terms and requirements of the alleged oral contract were vague and ambiguous. For example, Faller testified that Kirkham Michael's duties under the alleged oral

contract consisted of providing Standing Stone with a "bundle" of services, but Faller failed to describe such services with any detail or how such services were separate or distinct from those provided to SID 251 under the Engineering Contract. Further, Adler testified that no contract existed between Standing Stone and Kirkham Michael beyond the preliminary survey contract.

No one disputed the existence of the Engineering Contract between Kirkham Michael and SID 251, and Faller acknowledged that neither he nor Standing Stone were parties to the Engineering Contract. Both Faller and Adler testified that Kirkham Michael billed SID 251 for services provided under the Engineering Contract and that SID 251 paid for the services rendered. Neither Faller nor Standing Stone paid Kirkham Michael any money for services provided under the contract. The only evidence of any payment made by Faller or Standing Stone to Kirkham Michael occurred in May 2004 when Standing Stone paid Kirkham Michael for the work performed under the preliminary survey contract. Further, there was no evidence of any other bills from Kirkham Michael to Faller or Standing Stone, other than the $5,000 bill.

The existence of a contract between Standing Stone and Kirkham Michael was a question of fact for the trial court to determine. A trial court's factual findings in a bench trial of a law action have the effect of a verdict and will not be set aside unless clearly erroneous. *Enterprise Bank v. Knight*, 20 Neb. App. 662, 832 N.W.2d 25 (2013). The trial court found that the evidence did not establish that there was a meeting of the minds or a binding mutual understanding between the parties in this case sufficient to create an oral contract. We conclude that the trial court's finding that no contract existed between Standing Stone and Kirkham Michael is supported by the evidence and is not clearly erroneous.

We further note that even if the existence of an oral contract could be established, it would have violated the statute of frauds because it would have extended for more than 1 year. Kirkham Michael affirmatively alleged in its amended answer that Faller and Standing Stone's claims were barred in whole or in part under the statute of frauds. Nebraska's statute of frauds, Neb. Rev. Stat. § 36-202 (Reissue 2008), provides in part that "[e]very agreement that, by its terms, is not to be performed within one year from the making thereof" shall be void unless it is in writing. Standing Stone contends that it entered into the oral contract with Kirkham Michael by November 1, 2003. When Standing Stone sold the development to Gretna Stone in December 2005, over 2 years later, the project was not complete and Kirkham Michael was still working on the project. In addition, Adler testified that a development like Standing Stone cannot be completed in less than 1 year and could take anywhere from 5 to 10 years to complete. Because Kirkham Michael's engineering services were not performed within 1 year, the alleged oral contract between Standing Stone and Kirkham Michael would be void as a matter of law.

*Professional Negligence.*

Standing Stone next assigns that the trial court erred in failing to find that Kirkham Michael is liable under the theory of professional negligence. In Nebraska, absent proof of fraud or some other extraordinary facts that would override the general rule, professionals are not liable in negligence to third parties with whom they are not in privity of contract. *John Day Co. v. Alvine & Assocs.*, 1 Neb. App. 954, 510 N.W.2d 462 (1993).

We have already determined that Kirkham Michael performed engineering services for SID 251 pursuant to a written contract and that the alleged oral contract between Standing Stone

and Kirkham Michael was not supported by the evidence. Thus, Standing Stone lacks privity of contract with Kirkham Michael. Further, there was no evidence of fraud or extraordinary factors presented during trial as required to extend Kirkham Michael's liability to a third party with whom it had no privity of contract. Accordingly, the trial court did not err in concluding that Kirkham Michael was not liable to Standing Stone under the theory of professional negligence. This assignment of error is without merit.

*Promissory Estoppel.*

Lastly, Standing Stone assigns that the trial court erred in failing to make any findings on its promissory estoppel cause of action in which it sought damages for its detrimental reliance on representations made by Kirkham Michael. The trial court did not specifically discuss Standing Stone's promissory estoppel cause of action in its order. However, after concluding that Standing Stone did not have privity of contract with Kirkham Michael and Kirkham Michael was not liable in negligence, it stated that as a result, Standing Stone lacked standing and further discussion of its other causes of action was unnecessary. The court also specifically stated that it found in favor of Kirkham Michael on all of Standing Stone's causes of action, including breach of contract, professional negligence, and detrimental reliance.

Recovery on a theory of promissory estoppel is based upon the principle that injustice can be avoided only by enforcement of a promise. *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 270 Neb. 809, 708 N.W.2d 235 (2006). Under the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise. *Id.*

Under Nebraska law, the doctrine of promissory estoppel does not require that the promise giving rise to the cause of action must meet the requirements of an offer that would ripen into a contract if accepted by the promisee. *Id.* Simply stated, there is no requirement of "definiteness" in an action based upon promissory estoppel. *Id.* Instead of requiring reasonable definiteness, promissory estoppel requires only that reliance be reasonable and foreseeable. *Id.*

The difference between contract and promissory estoppel, then, is that a contract requires that the promisor intends to make a binding promise--a binding mutual understanding or "meeting of the minds"--while promissory estoppel requires only that the promisee's reliance on the promise be reasonable and foreseeable, even if the promisor did not intend to be bound. *Id.* A promisor need not intend a promise to be binding in order to foresee that a promisee may reasonably rely on it. *Id.*

Standing Stone contends that the evidence establishes a pattern of promises made by Kirkham Michael that were relied on by Standing Stone. Standing Stone argues that it relied to its detriment on Kirkham Michael's representations as to what the special assessments would be for the residential and commercial lots; that it would receive $185,700 from the sale of the outlot to the SID; and that the land designated for commercial use would be used for such purpose and not be reduced by 1 acre for the use of a detention pond.

The evidence does not establish that Kirkham Michael could have reasonably foreseen Standing Stone's reliance on the above representations. The alleged promises upon which Standing Stone says it relied are based on estimated project costs produced by Kirkham Michael. Such estimated project costs are specifically covered in the Engineering Contract between

Kirkham Michael and SID 251, which provides that Kirkham Michael cannot and does not guarantee that proposals, bids, or actual construction costs will not vary from "Opinions of Probable Construction Costs" prepared by Kirkham Michael and that such opinions represent Kirkham Michael's best judgment. As such, Kirkham Michael could not foresee that Standing Stone would rely on the estimated project costs to its detriment when the contract it had with SID 251 specifically said that the opinions of construction costs were estimates and were not guaranteed. Stated differently, if the party that Kirkham Michael had a contract with could not rely on the estimated project costs, Kirkham Michael had no reason to believe or foresee that Standing Stone would rely on them. In addition, Adler testified that a developer such as Standing Stone can rely on the estimates Kirkham Michael prepares if it wants, but the estimates are prepared for the SID. Standing Stone's final assignment of error is without merit.

## CONCLUSION

We conclude the district court did not err in finding that no contract existed between Standing Stone and Kirkham Michael and that therefore, there was no breach of contract. We further conclude that the trial court did not err in finding against Standing Stone on its professional negligence and promissory estoppel causes of action. Accordingly, the order of the district court is affirmed.

AFFIRMED.